**UNITED STATES of America, Plaintiff,**

v.

**Thomas A. HOLDSWORTH, Defendant.**

No. 97–1335M.

United States District Court,
D. Colorado.

Jan. 21, 1998.

Martha Paluch, Asst. U.S. Atty., Denver, CO, for Plaintiff.

Christopher Oldham, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER came before the Court on November 10, 1997 for trial. Present were the following: Martha Paluch, Assistant United States Attorney; Christopher Oldham, attorney for Defendant; and Defendant. The Court heard testimony from various witnesses and received into evidence several exhibits. The Court granted counsel the opportunity to file written closing arguments. Those arguments have been submitted and further argument will be waived.

### I.

The Court finds from the testimony and exhibits that the following are the facts relevant to this case. Defendant Thomas A. Holdsworth (Defendant) has been disabled for some period of time. He was receiving disability payments through the Social Security Administration (SSA). At some point in the past, Defendant made application for funds through a Plan to Achieve Self–Support (PASS plan). This application required that Defendant have contact with SSA officials in Denver, Colorado.

Defendant had contact with several SSA employees over the period of time leading up to the charge in this case. He had corresponded with Ms. Caroline Vahling on several occasions, as she was assigned to handle PASS plans. She had worked on Defendant's application and was familiar with his handwriting. Most of her interaction with Defendant was by letter. She did observe Defendant when he came to the office on one occasion, though she did not interview him at that time. She was able to recognize his handwriting on faxes admitted into evidence.

Ms. Deana Ertl–Lombardi is an attorney who works for the SSA in its Denver Regional Office. Ms. Ertl–Lombardi had become familiar with Defendant's PASS plan application, because he had begun to correspond with her about concerns he was having regarding his PASS application. She indicated that in March, 1997 Defendant sent repetitive faxes to her office over a two-day period that virtually paralyzed any ability to use the fax machine for any other purpose. She attempted on the second day to put a block on the faxes coming from Plaintiff's home telephone, but was unsuccessful. The content of those faxes was disturbing to her. As a result of the actions of Defendant, she contacted the Federal Protective Service (FPS) for help. Ms. Ertl–Lombardi testified that her office had nothing to do with the PASS plan application. Though she was familiar with Defendant's handwriting, she had never seen him until the day of trial.

Special Agent Ahmad Taha of the FPS was referred the inquiry from Ms. Ertl–Lombardi. He began his investigation in March, 1997. He obtained over seven hundred faxes

that had been received within the two-day period at the SSA Office. He attempted to contact Defendant by telephone but was unsuccessful. He then wrote Defendant a letter in which he advised Defendant as follows:

This letter is to advise you that your continued and repetitive faxing of materials to the Social Security Administration, which contains offensive language, must cease. In as much as you have a right to contact the Social Security Administration, your constant use of the fax machine has caused a disruption in the workplace. Should you continue to repetitively fax material to the Social Security Administration causing a disruption, you may be charged with 41–CFR–20–203 (sic), Disturbance, in Federal court. Should you have any questions please contact me at 236–7714.

Government Exhibit 10. Agent Taha testified that for a period of time the faxes stopped.

Agent Taha then was contacted by Nancy Gradel, an SSA employee, who was upset concerning faxes that had been sent to her by Defendant. Agent Taha reviewed those faxes and decided to issue a violation notice to Defendant. He went to Defendant's home on April 18, 1997 and knocked on the door. Someone came to the door, but refused to open it. Agent Taha then told the individual that a violation notice would be slipped through the door. That was done, and Agent Taha then left.

Ms. Gradel testified that she worked for SSA in the federal office building at 1961 Stout Street, Denver, Colorado. Ms. Gradel indicated that she was contacted twice at her home number by Defendant. She was unaware of how he had obtained the number. He also called her at work, though Ms. Gradel never talked with him directly. Ms. Gradel testified that she was not involved in Defendant's PASS plan application nor PASS plans in general.

Ms. Gradel testified that she received numerous faxes from Defendant over a several week period. In two of the faxes, Defendant threatened to file liens on her real estate. She stated the handwriting was that of De-

fendant, as she had become familiar with it. She testified that she felt threatened and intimidated.

A fax received on March 28, 1997 by Ms. Gradel read as follows:

Nancy Radel (sic) for Necessary Action

As regards the retaliation of sending my PASS to the Appeals Council. I hold you responsible for this cheap shot. Be advised a lein (sic) is being prepared accordingly. If you are not responsible for this cheap shot do not take the fall for the responsible party. S.S.I. will walk away from you just as they did to Linda Stoneburner and Eileen Lingen. You may want to discuss this matter with your husband and lawyer. This particular lien is very nasty and will mess up your credit report as well. To avoid the lien provide me the name and No. of the responsible party by Monday.

Sincerely,

Tom.

Government Exhibit #8. Defendant sent two other faxes at approximately the same time as the preceding one. The first refers to "My PASS Cat Max" being in a tree. Defendant's Exhibit C. The second indicates that the "PASS cat Max" has come down from the tree. Defendant's Exhibit D. Additional faxes were received on April 1, 1997, three on April 2, 1997, one on April 6, 1997, one on April 7, 1997, two on April 16, 1997, and two on April 21, 1997.

After some delay due to medical problems, Defendant appeared before this Court.[1] An information was filed charging Defendant with a violation of 18 U.S.C. §111(a)(1), alleging that Defendant committed "the offense of simple assault by forcibly intimidating and interfering with Nancy Gradel ..." Defendant entered a plea of not guilty to the charge, consented to have the matter heard by a United States Magistrate Judge, and requested a jury trial. A trial date then was set.

The prosecution subsequently filed an amended information in which two counts

---

1. Defendant's PASS plan was approved after a hearing before an Administrative Law Judge of SSA.

were alleged. Count I was the same charge under § 111(a)(1) as had previously been filed. Count II alleged a violation of 41 C.F.R. § 101–20.305. The prosecution then moved to dismiss the charge under § 111(a)(1).[2] The remaining charge was a Class C misdemeanor, and Defendant did not have a right to a jury trial. The matter was set for a bench trial.

Trial was held on November 10, 1997. The matter has been taken under advisement, as many issues appear to be of first impression.

## II.

Congress provided to the Administrator of the General Services Administration (GSA) the power to enact rules and regulations. 40 U.S.C. § 318a. This statute reads as follows:

The Administrator of General Services or officials of the General Services Administration duly authorized by him are authorized to make all needful rules and regulations for the government of the property under their charge and control, and to annex to such rules and regulations such reasonable penalties, within the limits prescribed in section 318c of this title, as will insure their enforcement: Provided, That such rules and regulations shall be posted and kept posted in a conspicuous place on such property.

Congress further provided as to a penalty as follows:

(a) Except as provided in subsection (b) of this section, whoever violates any rule or regulation promulgated pursuant to section 318a of this title shall be fined not more

than $50 or imprisoned not more than thirty days, or both.

40 U.S.C. § 318c.[3]

The Administrator of GSA promulgated 41 C.F.R. § 101–20.305 which reads as follows:

Any loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administration services provided on the property in a timely manner, is prohibited.

The prosecution charged in the Amended Information that Defendant had violated this regulation by sending repetitive and threatening faxes to SSA employees.

Several issues arose during the course of the trial. Only two need to be discussed.

*Posting Requirement:* Defendant has argued that no evidence was presented demonstrating the regulation at issue was posted in a conspicuous place in the building at 1961 Stout Street. Defendant's argument is that this requirement is mandatory and that nothing short of evidence of posting is sufficient.

Section 318a provides, in part, that "such rules and regulations shall be posted and kept posted in a conspicuous place on such property." Two important points are not in dispute: (1) no evidence of posting of the regulation at 1961 Stout Street was presented; and (2) no evidence was presented that Defendant came to 1961 Stout Street in per-

---

2. The provisions of 18 U.S.C. § 111(a)(1) prohibit forcible assault, resisting, opposing, impeding, intimidating or interfering with any person designated under 18 U.S.C. § 1114 and engaged in the performance of official duties. Simple assault *only* is a misdemeanor under § 111(a)(1). All other violations are felonies. It appears that the prosecution did not want to prosecute Defendant on a felony charge. From the evidence presented to this Court, a charge under § 111(a)(1) may well have been sustained.

3. There is some controversy as to the penalty that may be imposed for a violation of § 318a.

Congress enacted § 318a and § 318c in 1948. An argument has been made and accepted by one court in an unpublished opinion that the Sentencing Reform Act of 1984 changed the potential penalties for a violation of § 318a. *See, United States v. Hobbs,* 983 F.2d 1058 (Table), 1993 WL 7924 (4th Cir.1993) (fine cannot exceed $5,000 for Class C misdemeanor). The parties and the Court have proceeded on the basis of a maximum possible punishment of 30 days confinement, $50 fine, and $5 special assessment. The Court will not deviate from that understanding at this date in the proceedings.

son during any period of time when the faxes were being sent to the SSA offices.

In *United States v. Boyer*, 935 F.Supp. 1138 (D.Colo.1996), this Court was presented with the issue of proper posting of regulations under § 318a. The Court found that the traffic regulation at issue had not been posted in a conspicuous public place, but rather in a place not easily accessible to the public. *Id.* at p. 1142. The Court further found that the posting requirement was an integral part of a prosecution under § 318a, but that "[t]here is no magic formula under § 318a as to an appropriate place for posting ..." *Id.* at p. 1142.

Other courts have considered the posting requirements of § 318a. *United States v. Cassiagnol*, 420 F.2d 868 (4th Cir.1970) (rule limiting area for rally had been posted); *United States v. Murray*, 352 F.2d 397 (4th Cir.1965) (parking regulation posted in building next to lot held proper, when coupled with markings on lot); *United States v. Strakoff*, 719 F.2d 1307 (5th Cir.1983); (regulation posted in area that could only be seen after entry into the federal building and after violation of the regulation). The rationale of requiring posting is to provide notice to a person coming onto the property. *United States v. Boyer, supra.*

■ The facts of this case state the obvious. Even if the regulation had been posted in a conspicuous public place at 1961 Stout Street, Defendant would not have seen it because he never came to the building during the period of time at issue. Thus, the posting requirement becomes arguably a formality with no substance. The question is whether "posting" can be done in a different fashion.

Congress enacted 18 U.S.C. § 930 to prevent firearms from being taken into a federal facility. Notice of the prohibition must be posted conspicuously at each public entrance to the facility, unless the person has actual notice of subsections (a) or (d). 18 U.S.C. § 930(h). In examining this section, the Eleventh Circuit held that lack of a properly posted notice was an affirmative defense to a charge under this section. *United States v. McArthur*, 108 F.3d 1350 (11th Cir.1997). The question then is whether a defendant can legitimately argue that the failure to post

a regulation was prejudicial, when that person never came to the building.

In this case, Agent Taha wrote to Defendant and advised him that his actions were inappropriate. Government Exhibit 10. He advised Defendant that continued faxing could lead to criminal charges. He also indicated that previous faxes had contained offensive language. He cited "41–CFR–20–305, Disturbance" and offered to respond to any questions that Defendant might have. It is not disputed that Defendant did not call Agent Taha.

This Court ruled after the conclusion of the prosecution case that lack of evidence of posting would prevent consideration as criminal any conduct which occurred before March 19, 1997. Fed.R.Crim.P. 29(a). The Court allowed the remainder of the case to proceed. This was premised on the Court's finding that the notice provided by Agent Taha was sufficient to put Defendant on notice that his continued conduct could lead to a violation of a provision of the Code of Federal Regulations. Even though the citation was incomplete, the letter indicated that problems would arise if his conduct continued. In this case, actual notice was provided to Defendant, as contrasted to a notice posted on a wall that is read by virtually no one. In this case, the Court finds that Defendant received notice and the posting provision of § 318a was met.

*Government Property:* Defendant has argued that 41 C.F.R. § 101.20–305 can only be applied to actions that occurred on government property. This argument is prefaced upon the underlying authorization in 40 U.S.C. § 318a.

This issue must be examined broadly, as Defendant also has argued that no evidence was presented that the SSA office was in a GSA-owned building. The evidence before the Court which has been proven beyond a reasonable doubt is that Nancy Gradel was an employee of SSA and working at that agency's office at 1961 Stout Street. That building is immediately adjacent to the building in which this Court sits, and the Court is aware that 1961 Stout Street is a federal government office building managed by GSA. The evidence established this point, even

though no witness was directly asked if GSA owned or managed the building.

 The evidence established that the office in which the fax was located was that of SSA. GSA regulations are applicable in space that is leased or rented. *United States v. Burton,* 888 F.2d 682 (10th Cir.1989). In addition, the testimony of Agent Taha indicated that he had been summoned to the SSA office to investigate the repetitive and abusive faxes. Agent Taha is a member of the FPS, an agency authorized by Congress to provide protection for federal buildings owned or operated by GSA. 40 U.S.C. § 318(a). Agent Taha was empowered to investigate alleged infractions of regulations occurring on GSA property. 40 U.S.C. § 318(b); *Jarecki v. United States,* 590 F.2d 670 (7th Cir.1979), *cert. denied,* 444 U.S. 829, 100 S.Ct. 55, 62 L.Ed.2d 37 (1979); *see generally, United States v. Farkash,* 952 F.Supp. 696 (D.Colo.1996). The Court finds that the prosecution has proven beyond a reasonable doubt that 1961 Stout Street and the SSA office were under GSA supervision and control.[4]

The question then is whether the regulation requires that a defendant be physically on the premises before a violation can occur. Defendant sets forth the rhetorical question: "[c]ould a person driving past federal property on a city street while blaring a car stereo be prosecuted under the federal regulation?" Defendant's Closing Argument, p. 4.

Congress provided in § 318a that the Administrator of GSA and his designees were authorized to enact regulations "for the government of the property under their charge and control." This section does not on its face limit regulations only to actions carried out in person on GSA-owned or controlled property.

The Administrator of GSA promulgated a series of regulations applicable to GSA property. Title 41, Code of Federal Regulations, Subpart 101–20.3. Included in this subpart are regulations governing inspection of items carried into GSA buildings (41 C.F.R. § 101–20.301), gambling (41 C.F.R. § 101–20.306), soliciting (41 C.F.R. § 101–20.308), and post-

ing and distributing materials (41 C.F.R. § 101–20.309). This subpart includes 41 C.F.R. § 101–20.305, under which Defendant has been charged. The regulation is denominated simply as "disturbances."

The regulation at issue precludes "other conduct on property which creates ... a nuisance." It can be read to prohibit conduct that "impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely fashion." The evidence presented indicates beyond a reasonable doubt that Defendant's actions did impede and disrupt official duties by a government employee and prevented others from utilizing the fax machines during the period of March–April, 1997.

The question remains, however, whether any disruption had to be done while on the property administered by GSA. Though not mentioned by either side, the provisions of 41 C.F.R. 101–20.300 must be examined. This section reads as follows:

> Applicability: These rules and regulations apply to all property under the charge and control of the General Services Administration and *to all persons entering in or on such property.* Each occupant agency shall be responsible for the observance of these rules and regulations. (emphasis added).

The Administrator of GSA has defined the applicability of the regulations contained in Subpart 101–20.3 to persons entering in or on GSA-owned or controlled property. This regulation does not appear to be one that could be broadly construed to include the example of the car horn blowing on an adjacent street or for an individual sending faxes to a government office.

Neither side has presented any case law, nor has the Court found any, that allows application of 41 C.F.R. § 101–20.305 to someone who creates a disturbance or nuisance by use of a fax machine. Indeed, this Court found only one reported criminal case

---

4. It would have been preferable for the prosecution to have presented a witness to directly establish that 1961 Stout Street was a GSA-operated building and to detail where the regulations were posted in that building.

dealing with use of a fax machine. *United States v. Patrick*, 117 F.3d 375 (8th Cir.1997) (use of fax machine to send threatening message lead to charge pursuant to 18 U.S.C. § 875). Other cases have considered the misuse of a fax machine in the civil context. *Rouse v. Rouse*, 595 So.2d 1013 (Fla.App. 1992) (no harassment found when visitation request made by fax to spouse); *Cleary, Gottlieb, Steen & Hamilton v. Legal Services Staff Ass'n*, 837 F.Supp. 582 (S.D.N.Y.1993).

In *Cleary, Gottlieb*, a bitter labor dispute arose between the defendant union composed of legal workers and Legal Services for New York City (LSNYC). A member of the board of LSNYC was a partner in the law firm of Cleary, Gottlieb, Steen & Hamilton. The union attempted to influence the partner during a previous strike by staging a sit-in demonstration at his law firm. Later they attempted to disrupt the partner's law firm again when they deliberately faxed over four hundred copies of a single page message to the firm. *Id.* at p. 583. What occurred in *Cleary, Gottlieb* is not dissimilar to what happened in the present case.[5]

■ This Court finds that the Administrator of GSA has limited the applicability of 41 C.F.R. § 101–20.305 to "all persons entering in or on such property." 41 C.F.R. § 101–20.300. Since Congress has given the Administrator the authority to enact regulations as necessary, the Administrator has the authority to limit the applicability of such regulations. In this case, the result is that 41 C.F.R. § 101–20.305 cannot be broadly construed to include the actions of a defendant who sent fax messages from his home to a GSA-owned or controlled building. This Court's analysis of 41 C.F.R. § 101–20.300 leads to the conclusion that regulations contained in Subpart 101.20.3 are applicable to conduct committed on GSA-owned or controlled property.

*Other Issues:* Though other issues may be moot, the Court will note in passing that the

prosecution proved beyond a reasonable doubt that the faxes were sent by Defendant, that Nancy Gradel was a government employee, and that Nancy Gradel's work was impeded and disrupted by Defendant's threats.[6] But for the non-applicability of 41 C.F.R. § 101–20.305 to what occurred, the prosecution established by evidence beyond a reasonable doubt all of the elements necessary for a finding of guilty.

Stated simply, the actions of Defendant were outrageous. Although the evidence established that Defendant has had significant health problems, those problems do not justify what occurred in this case. Defendant could have been prosecuted under 18 U.S.C. § 111(1) and possibly convicted. Defendant may well want to reflect upon that before he undertakes to send any additional repetitive or threatening faxes to anyone.

IT IS HEREBY ORDERED that Defendant Thomas A. Holdsworth is found not guilty of the charge brought under 41 C.F.R. § 101–20.305, as the Court finds that this regulation cannot be applied to an individual who sends a fax from his home telephone to a GSA-owned or controlled office.

---

5. Colorado's harassment statute would appear to cover inappropriate communications made with the intent to harass, annoy, or alarm by telephone, including use of the fax machine for a fax transmission. Colo.Rev.Stat. § 18–9–111(e). This statute would appear to have been available for utilization under the Assimilative Crimes Act. 18 U.S.C. § 13.

6. Defendant should be aware that Colorado law provides significant penalties for filing of a false lien. Colo.Rev.Stat. § 38–35–109(3). Defendant had no basis to even contemplate the filing of a lien against Ms. Gradel.