**UNITED STATES of America, Plaintiff,**

v.

**Page PENK a/k/a Page Denk, Defendant.**

**No. 98–7103M.**

United States District Court,
D. Colorado.

June 29, 1998.

Sunhee Juhon, Assistant U.S. Attorney, Denver, CO, for U.S.

Page Penk, pro se.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER came before the Court for trial on June 12, 1998. The Government was represented by Sunhee Juhon, Assistant United States Attorney, and Defendant ap-

peared *pro se.* The Court heard the testimony of witnesses for both sides and received exhibits. The Court then took this matter under advisement. Further argument will be waived.

### I.

After the bombing of the Murrah Building in Oklahoma City, Chief Judge Richard P. Matsch of this Court was assigned to preside over the cases of *United States v. Timothy McVeigh* and *United States v. Terry Nichols.* In due course, Chief Judge Matsch determined that neither individual would be able to obtain a fair trial in Oklahoma. The cases then were transferred to Denver, Colorado.

The security planning for both trials commenced with the announcement that venue had been changed to Denver. Part of the security planning involved protection for the building in which this Court sits and in which the *McVeigh* and *Nichols* trials would be held.[1] Robert Kochevar, a senior traffic engineer for the City and County of Denver, testified that he was assigned to assist this Court's security committee in preparation for the Oklahoma City trials. It was the desire of the City of Denver to keep all streets open, but the city government was concerned about security issues.

Mr. Kochevar testified that it was agreed that concrete barriers would be placed all around the federal courthouse and federal office building in Denver. These barriers would provide some protection from a possible explosion, since cars would be some distance from the buildings. Mr. Kochevar indicated that he worked with a private contractor to place the barriers. Those barriers were placed outside of the curb in a parking lane, which was on property of the City of Denver.

Signs were placed then on the barriers. Mr. Kochevar testified that the City of Denver had no control over placement of signage on the barriers. That was done by federal officials.

Mr. William Kelly Russell testified that he was the buildings manager for the federal court house and federal office building on

---

1. Both the *McVeigh* and *Nichols* cases remained matters filed in the United States District Court for the Western District of Oklahoma. Chief

Judge Matsch was assigned to sit in that court specially for these cases, and the place of trial was moved to Denver.

December 15, 1997. He indicated that he had been involved in the security planning, including the decision to place the barricades along the curb. The barricades were paid for with federal funds. He testified further that the officers of the Federal Protective Service (FPS) had come to his office requesting permission to put signs on the barricades. That request was honored, and Mr. Russell's office ordered and paid for the signs. Mr. Russell also testified as to the location of the property line which is near the curb.

On December 15, 1997, Officer Dave Smith of the FPS was working in what was known as the "bullpen" area in front of the courthouse. This area had been set aside for press representatives who were covering the *McVeigh* and *Nichols* cases. Officer Smith noticed an individual walking in an off-limits area. The individual was heading for the front door of the building.

Officer Smith investigated and made contact with the individual, who later was identified as Defendant. Officer Smith stopped the Defendant and requested identification. Defendant did not have any identification and then became belligerent. Officer Smith requested information from Defendant as to where he crossed the barricades, but Defendant refused to provide the information at first.

Officer Smith testified that he ordered Defendant to keep his hands out of his pockets and to settle down. Defendant did neither, continuing to place his hands in his pockets. Officer Smith then did a pat down of Defendant and determined that no weapons were present. Defendant then provided his name to Officer Smith who contacted his office.

Shortly after Officer Smith made contact with Defendant, Dominic Federico, a freelance journalist located in the "bullpen" area, heard a disturbance. He testified that he observed the interaction between Officer Smith and Defendant. He noticed that Defendant was in an off-limits area and heard Defendant become more and more agitated as time went on. Mr. Federico did not understand what was being said, but the noise placed him ill at ease, as he noticed that

others in the "bullpen" area were directing their attention to Defendant due to his loud comments and belligerence. Mr. Federico indicated that there was "danger in the air", as he believed that the disturbance could have been a diversion for another action by someone else.

In his testimony, Defendant did not dispute that he had climbed over the barricades. He testified that he did not see any sign precluding him from doing so and that he was in a hurry. Defendant testified that he became upset when Officer Smith placed his hands on him. Defendant became agitated and that he became "a little loud ." Defendant testified that he never intended to violate any regulation. He did not believe that any disturbance had taken place or that he had violated any sign or order.

Defendant received two violation notices. The prosecution chose to file an information that became the charging document. Prior to trial, the prosecution filed a second amended information that was the controlling charging document. Defendant was charged with two violations of the Code of Federal Regulations (CFR). Defendant pled not guilty to the charges that were contained in the various charging documents.

## II.

Defendant was charged in Count I of the Second Amended Information with a violation of 41 C.F.R. §§ 101–20.304 and 101–20.315 (1991). These regulations were promulgated pursuant to the authority granted by 40 U.S.C. §§ 318a, 318b, 318c and 486(c).

The substantive regulation in Count I is § 101–20.304, which reads as follows:

> Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal Protective Officers and other authorized individuals.

The prosecution argued at trial that Defendant violated this regulation by climbing over the barricades and by refusing to comply with Officer Smith's orders to calm down and to keep his hands out of his pockets.[2]

---

**2.** Count I also references § 101–20.315. This regulation provides for a penalty for violation of all

regulations within the subsection of the CFR.

■ No argument was raised at trial by Defendant concerning the validity of the charged regulation. The Administrator of the General Services Administration (GSA) has been given power by Congress to enact rules and regulations covering actions of individuals on property owned or controlled by the federal government. 40 U.S.C. § 318a; *United States v. Holdsworth,* 990 F.Supp. 1274, 1277 (D.Colo.1998). Congress has provided that "such rules and regulations shall be posted and kept posted in a conspicuous place on such property." 40 U.S.C. § 318a. The evidence in this case indicated that copies of the subsection of regulations was properly posted at several locations in front of the court house. *See, United States v. Boyer,* 935 F.Supp. 1138 (D.Colo.1996).

The first question is whether Defendant failed to comply with an official sign. The testimony and evidence presented at trial indicated clearly that signs had been erected on the barricades surrounding the court house. Those signs stated "no parking" and "no standing," "no loitering," and "do not climb on barricades." Defendant had to climb on a barricade in order to get into the restricted area. He does not dispute that he did climb on a barricade.

■ The regulatory section provides, though, that "persons in and on property" shall comply with signs. The regulation specifically provides that a person must be "in and on" property controlled by GSA. The Administrator of the GSA has been granted power to enact regulations, and that would include also the power to place limitations on those regulations. *United States v. Holdsworth,* 990 F.Supp. at 1279. In this case, a person must be in and on government property and, therefore, so must the signs.

The testimony presented at trial indicated that the barricades were located in a parking lane owned and controlled by the City and County of Denver. The building plan submitted as an exhibit indicated that the property line ended at the curb. Beyond the curb was state jurisdiction. The Court finds that the clear language of § 101–20.304 requires that signs be posted on or in GSA-

controlled property. The regulation cannot be broadly construed to allow for application to signs not in or on federally controlled property. *Id.*[3] The prosecution has failed to establish that there was a violation of § 101–20.304 as to a failure to comply with an official sign on and in federal property.

■ The second part of the charge under § 101–20.304 is the allegation that Defendant failed to comply with "the lawful direction of Federal Protective Officers." The evidence is overwhelming that Defendant was directed to calm down and to keep his hands out of his pockets. In this case, the order of Officer Smith to Defendant to keep his hands out of his pockets was appropriate and lawful. The order was consistent with the regulatory scheme promulgated by the GSA Administrator to protect and control the property under his control. *United States v. Stansell,* 847 F.2d 609 (9th Cir.1988); *see also, United States v. Talbot,* 51 F.3d 183 (9th Cir.1995).

The prosecution has established beyond a reasonable doubt that Defendant received a lawful order to keep his hands out of his pockets. The order of Officer Smith was appropriate and one necessary for his protection, the protection of the public, and the protection of Defendant.

### III.

Defendant was charged in Count II with a violation of 41 CFR § 101–20.305 (1991)(§ 305). This regulation reads as follows:

Any loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited.

---

**3.** Defendant could have been charged under Colo.Rev.Stat. § 18–4–503 for second degree criminal trespass, as the barricades clearly constituted a fence "designed to exclude intruders."

Defendant's argument that a person would not know that they were to be excluded from the area enclosed by the barricades is pure fantasy.

The prosecution argued at trial that Defendant created a disturbance as prohibited by this section.

■ Reported cases dealing with § 305 involve protests that have occurred at federal buildings or court houses. *United States v. Gilbert,* 47 F.3d 1116 (11th Cir.1995); *United States v. Ramsey,* 992 F.2d 831 (8th Cir. 1993); *United States v. Talbot, supra; United States v. Stansell, supra.* Though there is no evidence of any organized protest by Defendant, the evidence is clear that there was a disturbance. The question is whether such disturbance violated § 305.

The Court has examined and reflected upon the testimony of all witnesses. The testimony of Mr. Federico is compelling. His attention was drawn to Defendant because of the disturbance that occurred. Mr. Federico was concerned, since he feared that Defendant might simply be creating a diversion for something else that might occur. Mr. Federico's testimony makes clear that Defendant was out of control for a period of time when dealing with Officer Smith.

The testimony of Officer Smith is found to be credible. He contacted Defendant who was in an area that was off-limits. Nothing has been presented that convinces this Court that Officer Smith acted in any way but professionally. Defendant simply lost his temper and became enraged at Officer Smith. He caused a disturbance that affected the operation of the "bullpen" area outside of the court house.

The regulation does not provide that any specific intent be present before there can be a violation. The Court finds that the prosecution has established beyond a reasonable doubt that Defendant created a disturbance as prohibited by § 305.

IT IS HEREBY ORDERED that Defendant is found guilty of Counts I and II of the Second Amended Information for the reasons set forth herein.