United States Court of Appeals,

Eleventh Circuit.

No. 94-7057.

UNITED STATES of America, Plaintiff-Appellee,

v.

Taneilian McARTHUR, Defendant-Appellant.

March 31, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. CR 94-135-N), Robert E. Varner, District Judge.

Before ANDERSON, Circuit Judge, and FAY and KRAVITCH, Senior Circuit Judges.

KRAVITCH, Senior Circuit Judge:

Title 18, United States Code, section 930(a), bans the knowing possession of a firearm in a federal facility. A separate subsection of the statute conditions convictions under this provision upon the posting of conspicuous notice of the prohibition. The main issue in this case, and one of first impression, is whether proof of adequate notice is an element of the crime of possession or an affirmative defense. We hold that it is an affirmative defense. We also hold, consistent with established precedent, that a restitution order under the Victim and Witness Protection Act can only be based upon harm resulting from conduct of which the defendant was convicted.

I.

Taneilian McArthur was involved in an argument with another man, Corey Smith, inside the Enlisted Men's Club at Maxwell Air Force Base, Gunter Annex. McArthur left the club first, retrieved his gun from the trunk of his car and placed it on the front seat.

In the parking lot later that evening, McArthur pulled his car in front of Smith as Smith exited the club.  Smith approached McArthur's car and McArthur shot him, allegedly in self-defense.

A grand jury indicted McArthur for committing three federal crimes:  assault with intent to commit murder within the special maritime and territorial jurisdiction of the United States, 18 U.S.C.A. § 113(a) (1969 & Supp.1996) (Count One);  using and carrying a firearm in relation to a crime of violence, 18 U.S.C.A. § 924(c)(1) (Supp.1996) (Count Two);  and possessing a firearm in a federal facility, 18 U.S.C.A. § 930(a) (Supp.1996), *amended by* Pub.L. 104-294, § 603(u), 110 Stat. 3488,—(1996) (Count Three).[1] A jury acquitted McArthur of Counts One and Two, but convicted him of Count Three.  The district court sentenced McArthur to six months' imprisonment.  In calculating restitution pursuant to the Victim and Witness Protection Act, 18 U.S.C.A. §§ 3579-3580 (1985), the district court found that the financial loss from Smith's hospitalization and injuries totaled $28,176.07 and ordered McArthur to pay that amount.

On appeal, McArthur alleges that his conviction must be reversed because the government failed to prove an essential element of the offense charged in Count Three.  He further claims that restitution was improper, because it was founded on counts of which he was acquitted.

## II.

---

[1]When the instant case was briefed, Congress had not yet amended section 930 to make technical corrections to the section's internal cross-references.  We use the current version of the statute.

Title 18, section 930 ("section 930") defines four federal crimes:  simple possession of a firearm or dangerous weapon in a federal facility (subsection (a));[2] simple possession in a federal court facility (subsection (e));  possession with intent to use the weapon in the commission of a crime (subsection (b));  and killing or attempted killing in the course of a violation of subsections (a) or (b) (subsection (c)).  Convictions under subsections (a) and (e) are limited by subsection (h).  It provides:

> Notice of the provisions of subsections (a) and (b) shall be posted conspicuously at each public entrance to each Federal facility, and notice of subsection (e) shall be posted conspicuously at each public entrance to each Federal court facility, and no person shall be convicted of an offense under subsection (a) or (e) with respect to a Federal facility if such notice is not so posted at such facility, unless such person had actual notice of subsection (a) or (e) as the case may be.

18 U.S.C.A. § 930(h).

 McArthur first contends that the government failed to prove beyond a reasonable doubt all of the elements of the crime charged in Count Three and that the district court erred in failing to instruct the jury as to all of the elements the offense.  Specifically, he argues that whereas subsection (a) of section 930 bans firearm possession in federal facilities, subsection (h) prohibits a conviction under subsection (a) unless conspicuous notice is posted to inform people of the prohibition.  According to McArthur, subsection (h) is an element of the offense of possession

---

[2]"Except as provided in subsection (d), whoever knowingly possesses or causes to be present a firearm or other dangerous weapon in a Federal facility (other than a Federal court facility), or attempts to do so, shall be fined under this title or imprisoned not more than 1 year, or both."  18 U.S.C.A. § 930(a).

and, therefore, the government must prove the existence of the required notice beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368 (1970) (government must prove every element of a crime beyond a reasonable doubt). We review his statutory claim *de novo. United States v. De Castro,* 104 F.3d 1289, 1291 (11th Cir.1997).[3]

To determine whether an exception to a criminal offense is an element of the crime or an affirmative defense, we undertake a three-part inquiry. We begin with the language and structure of the statute. Next, we examine the legislative history of the provision. *United States v. Laroche,* 723 F.2d 1541, 1543 (11th Cir.1984) (following *United States v. Mayo,* 705 F.2d 62 (2d Cir.1983)), *cert. denied,* 467 U.S. 1245, 104 S.Ct. 3521, 82 L.Ed.2d 829 (1984). Finally, we decide whether the defendant or the government is better situated to adduce evidence tending to prove or disprove the applicability of the exception. *United States v. Jackson,* 57 F.3d 1012, 1016 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 432, 133 L.Ed.2d 346 (1995).

With regard to the language and structure of the statute, we are guided by two interpretive presumptions. First, a narrow proviso to a more general statutory offense is more likely to be an

---

[3]Although McArthur did not raise this matter to the district court, he is entitled to review for plain error. Were we to conclude that adequate notice is an element of the offense, we also would find plain error. Failure to instruct the jury regarding an element of the offense is plain error where, as here, the government introduces no evidence regarding the element in question. *Cf. De Castro,* 104 F.3d at 1293-95 (noting similarities between plain error and harmless error review and concluding that district judge's failure to instruct on element of offense was harmless in light of substantial trial evidence).

affirmative defense than an element of the offense.  As the Supreme Court has stated, "an indictment ... founded on a general provision defining the elements of an offense ... need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere.  ... "  *McKelvey v. United States,* 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301 (1922).[4]  A second, but related, rule is that where one can omit the exception from the statute without doing violence to the definition of the offense, the exception is more likely an affirmative defense.  Thus, in *United States v. Outler,* 659 F.2d 1306, 1309-10 (5th Cir.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 665 (1982), we explained that where "an exception ... [is] so necessary to a true definition of the offense ... the elements of the crime are not fully stated without the exception."[5] In that case, we held that an essential element of the crime of prescribing controlled substances is that a physician act "without a legitimate medical reason," even though such a requirement was not part of the statutory definition of the crime.[6]  659 F.2d at

---

[4]*See also United States v. Freter,* 31 F.3d 783, 788 (9th Cir.) (exception to general proscription presumptively affirmative defense), *cert. denied,* --- U.S. ----, 115 S.Ct. 646, 130 L.Ed.2d 551 (1994);  *United States v. Durrani,* 835 F.2d 410, 421 (2d Cir.1987) (same).

[5]*See also United States v. English,* 139 F.2d 885, 886 (5th Cir.1944) ("where the language of the section defining the offense is so entirely separable from the exception that the ingredients constituting the offense may be accurately and clearly defined without reference to the exception, the matter contained in the exception must be set up as a defense by the accused").

[6]*See also United States v. Steele,* 105 F.3d 603 (11th Cir.1997) (extending *Outler* from physicians to pharmacists).

1309.  We reasoned that due process requires that an exception which "embodies the culpability of the offense" must be an essential element.  *Id.* at 1310.  Naturally, these presumptions are merely interpretive aids;  we also consider other indications of legislative will evident in the statute.

Considering the first of our interpretive guides, subsection (h) appears to be an affirmative defense;  it is a narrow exception to a general proscription.  Specifically, subsection (a) bans all firearm possession in federal facilities, and subsection (h) excepts possession at facilities where notice is inadequate or inconspicuous.  Section 930's plain language indicates that subsection (h) is a defense:  "no person shall be convicted of *an offense* under subsection (a) or (e)" without notice.  18 U.S.C.A. § 930(h) (emphasis added).  Because subsection (a) by itself comprises "an offense," subsection (h) does not appear to be an element of the offense.[7]

Moreover, subsection (a) defines a perfectly cogent offense. Absent subsection (h), subsection (a) simply bans knowing possession on federal facilities.  We do not find this troubling; indeed, we note that section 930 defines other crimes—possession of a firearm with intent to use it in a crime (subsection (b)) and killing or attempted killing in the course of another violation

---

[7]Nevertheless, section 930 "is not happily worded," *McKelvey,* 260 U.S. at 357, 43 S.Ct. at 134, and there is some evidence supporting McArthur's reading.  For instance, subsection (a) states that firearm possession is illegal, "[e]xcept as provided in subsection (d)."  Subsection (d) states that subsection (a) does not apply to certain weapon possession, such as law enforcement and lawful hunting.  By contrast, subsection (a) does not mention subsection (h) as an exception.

(subsection (c))—without excepting prosecutions where notice is deficient. This statute is not the "rare instance[ ]" where an exception is truly an element of the crime, raising the concerns we highlighted in *Outler.* Section 930 does not conceal *mens rea* in an exception; rather, subsection (a) requires the government to prove that a defendant knowingly possessed a firearm in a federal facility.[8] Consequently, it ensures convictions based on more than mere innocence—it requires that the defendant know he has a gun in his possession and know that he is entering a federal facility. [9] In light of this requirement and the pervasive regulation of weapon possession at federal facilities,[10] due process is not offended by

---

[8]We are not unmindful of the Supreme Court's caution, in *Staples v. United States,* 511 U.S. 600, 610, 114 S.Ct. 1793, 1799, 128 L.Ed.2d 608 (1994), that "there is a long tradition of lawful gun ownership by private individuals in this country," and the attendant presumption against criminalizing gun possession without the requisite illegal intent. We note, however, that the statute here requires the government to show scienter in order to convict a person for possessing a firearm, unlike the statute at issue in *Staples.* Although McArthur's reading of the statute would increase the likelihood that no one would be prosecuted under the statute absent a "vicious will," *see id.* at 617, 114 S.Ct. at 1803, Congress has the authority to define the *mens rea* it deems appropriate for a given crime. *Id.* at 603-06, 114 S.Ct. at 1796-97.

[9]Thus, this is not a situation where the language chosen by Congress would "criminalize otherwise innocent conduct." *United States v. X-Citement Video, Inc.,* 513 U.S. 64, ----, 115 S.Ct. 464, 469, 130 L.Ed.2d 372 (1994). *See also United States v. Wells,* --- U.S. ----, ----, 117 S.Ct. 921, 931, --- L.Ed.2d ---- (1997) (following plain meaning of text where "an unqualified reading ... poses no risk of criminalizing so much conduct as to suggest that Congress meant something short of the straightforward reading").

[10]*See, e.g.,* 4 C.F.R. § 25.14 (possession of firearms prohibited in GAO Building, except for "official purposes"); 32 C.F.R. § 234.10 (possession of firearms prohibited at Pentagon without authorization from Defense Protective Service); 32 C.F.R. § 1903.7 (possession of firearms prohibited on CIA protected property without authorization from Director of

a prosecution without proof of adequate notice.

The legislative history of section 930, although sparse, indicates that Congress viewed subsection (h) as an affirmative defense. Part of the massive Anti-Drug Abuse Act of 1988, Pub.L. 100-690, 102 Stat. 4181 (1988), section 930 originated in the House of Representatives and was enacted into law as passed by the House. *See* H.R. 5210, 100th Cong. § 6215 (1988). Before the Senate voted on the measure, the Senate Judiciary Committee reviewed the House bill and Senator Biden, the committee chair, drafted a section-by-section analysis. With regard to the provision before us, he stated that "the absence of the required notice will be a complete *defense* to the simple possession offense [subsection (a) ] unless the defendant had actual knowledge." 134 C ONG. REC. S.17,360-02 (daily ed. Nov. 10, 1988) (statement of Sen. Biden) (emphasis added). Although this history would not, by itself, carry the day for the government, it supports our reading of the statute.[11]

---

Security); 44 C.F.R. § 15.14 (possession of firearms prohibited at FEMA Special Facility without authorization from FEMA Director). *Cf. Downing v. Kunzig,* 454 F.2d 1230, 1231 n. 1 & 1233 (6th Cir.1972) (taking judicial notice of nationwide violence and hazard to government officials; noting that federal officials have discretion to adopt reasonable rules to guard against such dangers).

[11]An unenacted bill from the same Congress also has arguable bearing on the matter. The Senate considered and abandoned—likely in favor of the more expansive House provision discussed above—a bill that only would have prohibited firearm possession in federal court facilities. That bill expressly declared that the absence of conspicuous notice was an affirmative defense. Undetectable Firearms Act, S. 2327, 100th Cong. § 5(b) (1988). We, however, decline to draw any inferences from its non-enactment. The omission of the affirmative defense language in the final bill "is not dispositive because it does not tell us precisely where the compromise was struck" in

Next, courts determining whether a statutory exception is an element of the crime or an affirmative defense often consider whether the government or the defendant is in the best position to prove facts necessary to trigger the exception. Where defendants are better equipped to prove facts that would allow them to take advantage of a statutory exception, we ordinarily view that exception as an affirmative defense. *See, e.g., Jackson,* 57 F.3d at 1016 (in prosecution of felon in possession of firearm, government need not prove prior felony conviction is still valid; "[a] defendant ordinarily will be much better able to raise the issue of whether his prior convictions have been expunged or set aside").[12] In the instant case, we do not view either party as necessarily better able to prove whether notice was adequate. Evidence relevant to the issue likely would not be difficult to collect.

Finally, although the parties identify, and we find, no case law relevant to the precise question before us,[13] courts have

enacting section 930. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 256, 114 S.Ct. 1483, 1492, 128 L.Ed.2d 229 (1994).

[12]*See also Durrani,* 835 F.2d at 421 (in prosecution for illegal sales of military equipment, court rejects defendant's claim that "official use" exception was element of crime, even though government retained most records that would allow defendant to prove applicability of exception; court noted that regulations require that certain documents be publicly available); *Mayo,* 705 F.2d at 76 (in prosecution for possession of unregistered firearm, defendant in best position to show his weapon fits within antique firearm exception).

[13]McArthur claimed in his reply brief that *United States v. Lunstedt,* 997 F.2d 665 (9th Cir.1993), held that conspicuous notice was an element of the offense in section 930. At oral argument, however, counsel conceded that the court did not reach the issue. In *Lunstedt,* the district court instructed the jury to consider whether the notice was conspicuous. The only issue

interpreted an analogous statute and its implementing regulations. Under 40 U.S.C.A. § 318a, the General Services Administration ("GSA") is authorized to regulate government property and to make violating such regulations a crime, so long as the rules it adopts are posted conspicuously on site. Prior to the enactment of section 930, a GSA regulation prohibited gun possession at federal facilities.[14] Two cases interpreting that regulation implicate the question before us; unfortunately, their holdings conflict.

In *United States v. Crow,* 824 F.2d 761, 762 n. 2 (9th Cir.1987), the Ninth Circuit refused to address a defendant's claim that notice was lacking, raised for the first time on appeal. Thus, the court impliedly held that absence of notice is an affirmative defense that the defendant must raise at trial. [15] By contrast, in *United States v. Strakoff,* 719 F.2d 1307 (5th

---

before the Ninth Circuit was whether the district court adequately defined "conspicuous."

[14]GSA is "authorized to make all needful rules and regulations for the government of the property under [its] charge or control.... * * * *Provided,* That such rules and regulations shall be posted and kept posted in a conspicuous place on such property." 40 U.S.C.A. § 318a (1986). GSA promulgated regulations which, *inter alia,* prohibited firearm possession on federal property. 41 C.F.R. § 101-20.313 (1988). GSA amended the regulations in 1989 when section 930 superseded the firearms prohibition. 54 Fed.Reg. 15,757 (1989) (codified at 41 C.F.R. § 101-20.313 (1996)).

[15]Our characterization of the majority's implied holding is strengthened by Judge Noonan's dissent. He objected to the majority's refusal to address the claim that the lack of notice was an element of the crime, saying that posting "constitute[d] an essential element that the United States must prove in order to prove crime in the violation of the regulation." 824 F.2d at 762. Further, as we noted above, *see supra* note 3, the Ninth Circuit could not brush aside—even on plain error review—the defendant's claim that the government failed to prove an element of the offense.

Cir.1983), the court reversed a conviction under the GSA regulations because it ruled that the posted notice was not conspicuous. Although the court did not state outright that lack of notice was an element of the firearm offense, it indicated that it believed as much by holding that, in light of the inconspicuous notice at the federal building at issue, the government failed to prove the defendant's guilt beyond a reasonable doubt. *Id.* at 1309. Further, it stated that "for [the defendant] to have violated [the regulation], the regulation must have been ... posted and kept posted "in a conspicuous place' in the Courthouse." *Id.*[16]

Although these disparate holdings give us pause, we believe that significant differences between the GSA regulation at issue in those cases and section 930 counsel against following the Fifth Circuit with regard to the statute before us. The notice provision of section 930 is located in a subsection apart from the definition of the offense, whereas the provision authorizing GSA to regulate federal facilities contains the notice requirement. 40 U.S.C.A. § 318a. Further, section 930, unlike the GSA regulation, requires the government to prove that a person knowingly possesses a firearm on federal premises. As a result, it guarantees that prosecutions

---

[16]Were it not for this latter sentence, we would not read the court to have concluded that absence of notice was an element of the offense. We have stated previously that "an element is not always an "essential element' simply because the prosecution carries the burden of proof...." *Outler,* 659 F.2d at 1309; *see also Laroche,* 723 F.2d at 1543 ("it is incumbent upon the defendant to properly present the statutory exception, after which point the government assumes the burden of disproving its applicability"). But the *Strakoff* court not only placed the burden on the government; it stated that the government could not prove a violation of the regulation without demonstrating absence of notice.

founded on purely innocent conduct (carrying a firearm into a building without knowing it is a federal facility, e.g.) will fail. Were we interpreting the GSA regulation's strict liability regime instead of section 930, we too might be inclined to view the notice requirement as an element of the offense, because the GSA regulation did not ensure that a defendant have any culpability to be convicted. *See, e.g., Outler,* 659 F.2d at 1309 (where a statutory provision "embodies the culpability of the offense," it is likely to be an essential element of the crime). Given these distinctions, the case law does not change our view that section 930 is an affirmative defense.

In sum, our analysis of the language and structure of the statute favors treating subsection (h) as an affirmative defense. Moreover, the legislative history also supports our view and our position would not place an undue evidentiary burden on defendants. We are buoyed in this interpretation by the Ninth Circuit's similar holding, and believe that the Fifth Circuit's contrary position can be attributed to differences between the provision it considered and the one before us. Consequently, we hold that unless the defendant introduces evidence that notice of the federal law is lacking, the government, in a prosecution for the possession of firearms at federal facilities, need not prove that notice of the ban on such possession was posted conspicuously at the facility.

## III.

McArthur next argues that the district court erred in imposing restitution based on conduct of which he was acquitted. The government responds that a sentencing judge ordinarily is

allowed to consider relevant conduct, even if the jury has decided that the prosecution failed to prove guilt beyond a reasonable doubt.[17]

McArthur's position is more tenable. In *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), the Supreme Court held that a restitution order pursuant to the Victim and Witness Protection Act, 18 U.S.C.A. §§ 3579-3580, must not consider the harm arising from conduct of which a defendant was acquitted. Interpreting the statute's plain language,[18] the Court stated that Congress's intent in crafting the statute was to allow restitution only for the crime of conviction. Thus, "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." 495 U.S. at 420, 110 S.Ct. at 1984. Following *Hughey,* we have held that restitution is inappropriate if based on charges of which the defendant was acquitted, even if those charges relate to the crime of conviction. *United States v. Young,* 953 F.2d 1288, 1289 (11th Cir.1992).

Applying this standard, we hold that the district court's restitution order was improper. McArthur was convicted only of

---

[17]At oral argument, the government also argued that McArthur waived this argument by not making a sufficiently specific objection to the district court. We need not evaluate the adequacy of McArthur's argument, however, because his claim is entitled to plain error review and we consider a district court's misinterpretation of its authority to order restitution plain error. *United States v. Obasohan,* 73 F.3d 309 (11th Cir.1996).

[18]"The court, when sentencing a defendant convicted of an offense ... may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense." 18 U.S.C.A. § 3579(a)(1).

possessing a firearm in a federal facility and his possession occasioned no loss. Rather, his use of the firearm caused the injuries and expenses for which the court awarded restitution. Consequently, holding him responsible for the related costs was error. *See United States v. Cobbs,* 967 F.2d 1555, 1558-59 (11th Cir.1992) (where defendant pleaded guilty to possessing illegal access devices to make fraudulent credit cards, but government dismissed charges stemming from use of such devices, restitution was improper because no loss resulted from mere possession).

The district court held, and the government argues here, that the restitution award was proper in light of precedent establishing the sentencing court's power to consider relevant conduct, even where the defendant is acquitted of some charges. *See United States v. Watts,* --- U.S. ----, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *United States v. Averi,* 922 F.2d 765 (11th Cir.1991). These cases are inapposite because they dealt broadly with a sentencing court's power but did not address, as did *Hughey,* the specific question before us—the statutory scope of the district court's authority to impose restitution under the Victim and Witness Protection Act.

We generally remand a case to the district court following our conclusion that its restitution order was improper, so that the district court may reevaluate its sentence in light of the vacated restitution award and give effect to its "intent in creating a sentencing plan." *Young,* 953 F.2d at 1290. In the instant case, however, the district court did not trade restitution for leniency; rather, McArthur received the maximum sentence and supervised

release available under the guidelines and was found incapable of paying a fine.  Thus, we see no purpose in a remand.

                                    IV.

Accordingly, we AFFIRM McArthur's conviction and VACATE the district court's restitution order.