**UNITED STATES of America, Plaintiff,**

v.

**Joe Lee ROGERS, Defendant.**

**No. CR. 201CR3301WCO.**

United States District Court,
N.D. Georgia,
Gainesville Division.

Dec. 20, 2001.

Thomas Aloysius Devlin, Jr., Assistant United States Attorney, Atlanta, GA, for plaintiff.

Stephanie Ann Kearns, Federal Defender Program, Atlanta, GA, for defendant.

### MEMORANDUM OPINION

O'KELLEY, District Judge.

Defendant Joe Lee Rogers was charged by criminal information based on the following allegations, as set forth in count two of the information:

> On or about October 6, 2000, in the Northern District of Georgia, the defendant ... during and in relation to a

---

crime of violence for which he may be prosecuted in a court of the United States, that is, the robbery of the Branch Bank & Trust located at 1460 McFarland Road, Alpharetta, Cherokee County, Georgia, in which the said defendant did take, by intimidation, and by force and violence, from the presence of various bank employees United States currency then in the custody and control of the said bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, did knowingly use and carry a firearm, that is, a Mossberg twenty-gauge pump-action shotgun, and in so doing, did discharge the firearm, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

*See* Criminal Information, filed September 13, 2001.

Defendant entered a plea of guilty to possession of a firearm during a robbery.[1] The statute setting forth the elements of the crime to which defendant pled guilty reads in pertinent part as follows:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence ...
>
> (i) be sentenced to a term of imprisonment of not less than five years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A)(i-iii).

At sentencing, defendant objected to the part of the presentence report recommending that he be ordered to pay restitution for the gun offense. The court overruled that objection and ordered defendant to pay restitution to the bank for the money taken during the robbery in the amount of $15,051.00.[2] Defendant's counsel indicated that she would appeal the order requiring defendant to pay restitution to the bank, although the amount of restitution itself is not in dispute. Defendant cites the Eleventh Circuit cases of *United States v. Santos,* 93 F.3d 761 (11th Cir. 1996), and *United States v. McArthur,* 108 F.3d 1350 (11th Cir.1997), to support the claim that the court lacked authority to order defendant to pay restitution for the amount taken during the bank robbery.

The Victim and Witness Protection Act ("VWPA") provides that a district court at sentencing may order a defendant to make restitution to any victim of the offense for which the defendant is being sentenced. 18 U.S.C. § 3663(a)(1). For purposes of the VWPA,

> the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered, including, in the case of an offense that involves as an element a scheme, conspiracy, or pat-

---

**1.** Defendant was also charged with and pled guilty to conspiracy to commit armed robbery pursuant to 18 U.S.C. § 371. This opinion addresses only the issues raised with regard to defendant's conviction for possession of a firearm during the commission of a robbery. 18 U.S.C. § 924(c)(1)(A)(iii).

**2.** The court also ordered defendant to pay restitution to Ingles Markets in the amount of $8,000.00. Defendant does not challenge this part of the sentence, and therefore the court will not address it.

tern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(2).

The VWPA further states that "[t]he court, in determining whether to order restitution . . . and the amount of such restitution, shall consider . . . the amount of the loss sustained by any victim as a result of the offense . . . the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C.A. § 3664(a).

In the instant case, the amount of restitution that must be paid is not in dispute. Rather, the sole issue is whether the imposition of restitution is proper. The Supreme Court limited the district court's authority to order restitution in *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). Specifically, the Court held that the "language and structure of the Act make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey*, 495 U.S. at 413, 110 S.Ct. 1979 (footnote omitted). Additionally, the Court noted that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Id.* In *Hughey*, the petitioner Frasiel L. Hughey was "indicted on three counts of theft by a United States Postal Service employee and three counts of use of unauthorized credit cards." *Hughey*, 495 U.S. at 413, 110 S.Ct. 1979. As part of a plea agreement, Hughey pled guilty to count four of the indictment in exchange for the government's "agreement to dismiss the remaining counts and to forgo prosecution 'for any other offense arising in the Western District of Texas as part of the scheme alleged in the indict-ment.' " *Id.* (quoting documents filed with the court). Count four charged that "on or about October 18, 1985, . . . [petitioner] did knowingly and with intent to defraud use an unauthorized [MBank Mastercard credit card] issued to Hershey Godfrey, . . . and by such conduct did obtain things of value aggregating more than $1,000 . . . ." *Id.* at 413–14, 110 S.Ct. 1979 (citation omitted). "During the plea proceeding and as part of the factual basis of petitioner's plea, the Government proffered evidence that petitioner had stolen not only Godfrey's card, but also at least 15 other cards." *Id.* at 414, 110 S.Ct. 1979. Hughey's counsel informed the district court that the plea was confined to the allegations in count four and that Hughey did "not mak[e] admissions to anything other than the facts pertaining to count four." *Id.* (quoting documents filed with the court).

The losses MBank sustained as a result of the unauthorized uses of the Godfrey credit card identified in the count to which Hughey pled guilty amount to $10,412.00 *Id.* This is the amount Hughey submitted as the appropriate restitution amount. The district court, on the other hand, ordered Hughey to make restitution in the amount of $90,431.00, which represents the total of MBank's losses relating to Hughey's alleged theft and use of 21 credit cards. *Id.* The Fifth Circuit affirmed, holding that the "VWPA permits a court to require restitution beyond that amount involved in the offense of conviction when there is a significant connection between the crime of conviction and similar actions justifying restitution." *Id.* at 414–15, 110 S.Ct. 1979 (citing *United States v. Hughey*, 877 F.2d 1256, 1264 (5th Cir.1989)). The Supreme Court reversed the Fifth Circuit's decision, noting that "[p]etitioner pleaded guilty only to the charge that he fraudulently used the credit card of Hershey Godfrey" and holding that "[b]ecause

the restitution order encompassed losses stemming from the alleged fraudulent uses of cards issued to persons other than Godfrey, such portions of the order are invalid." *Id.* at 422, 110 S.Ct. 1979.

The Eleventh Circuit has reiterated these principles established by the Supreme Court in *Hughey,* noting that "a restitution order under the VWPA may not exceed the loss attributable to the specific conduct that is the basis of the offense of conviction." *United States v. Stone,* 948 F.2d 700, 704 (11th Cir.1991); *see also United States v. Young,* 953 F.2d 1288, 1289 (11th Cir.1992) (citing *Hughey* for the proposition that "[a] court may not authorize restitution even for like acts significantly related to the crime of conviction."). In *United States v. Stone,* the defendant and nine other individuals were charged in a 103–count indictment. *See Stone,* 948 F.2d at 701. "Count 1 charged Stone with conspiring to commit mail fraud in violation of 18 U.S.C. § 371." *Id.* This count described a "broad scheme to defraud various businesses that extend credit to their customers." *Id.* Counts seventy-nine though ninety included charges of substantive mail fraud offenses in violation of 18 U.S.C. § 1341, each of which identified a particular credit card application and alleged that the information provided in the application was false. *See id.* "Counts 91 through 103 charged Stone with using false Social Security numbers in credit card applications with the intent to deceive a business in violation of 42 U.S.C. § 408(g)(2)." *Id.* The card applications at issue in counts ninety-one through 103 were, with one possible exception, the same as those at issue in counts seventy-nine through ninety. *See id.*

As part of a plea agreement, Stone pled guilty to count eighty-one and, by the terms of the agreement, the government agreed to dismiss the remaining counts. *See id.* Count eighty-one charged that Stone committed mail fraud by submitting to Amoco Oil Company a fraudulent credit card application in the name of Jessie Flowers that included false employment information and false credit references. *See id.* The district court ordered Stone to make restitution in the amount of $12,390.85, which represents losses allegedly sustained as a result of Stone's fraudulent applications to Amoco Oil Company, Citgo Oil Company, Parisian Department Store, J.C. Penney Company, and Crown Petroleum Corporation. *See id.* at 702. Stone appealed the order, arguing that the district court did not have the authority to order restitution for an amount in excess of the loss attributable to count eighty-one, the count on which she was convicted. *See id.* The Eleventh Circuit affirmed without opinion, but the Supreme Court vacated the judgment and remanded the case for further consideration in light of the Court's intervening decision in *Hughey.* *See id.* Reconsidering the issue in light of *Hughey,* the Eleventh Circuit held that "a restitution order under the VWPA may not exceed the loss attributable to the specific conduct that is the basis of the offense of conviction .... Because Stone pleaded guilty and was convicted only of the conduct charged in Count 81 involving Amoco Oil Company, *Hughey* mandates a holding that the district court exceeded its authority in ordering restitution in an amount in excess of the loss attributable to Count 81." *Id.* at 704.

The Eleventh Circuit addressed a similar issue in *United States v. Cobbs,* 967 F.2d 1555 (11th Cir.1992). In *Cobbs,* a federal grand jury returned a nineteen count indictment against the defendant Cobbs. *See id.* at 1556. Count one charged him with "attempting to fraudulently obtain money through the unauthorized use of an access device in violation of 18 U.S.C. § 1029(a)(2) and (b)(1)." *Id.* Count two alleged that Cobbs had used an

unauthorized credit card to fraudulently obtain $1516.00 in cash and other valuables in violation of 18 U.S.C. § 1029(a)(2). *See id.* Count three charged that Cobbs knowingly and with intent to defraud possessed eighty-nine unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3). *See id.* Counts four through nineteen charged him with using various unauthorized access devices on numerous dates in violation of 18 U.S.C. § 1029(a)(2). *See id.* Cobbs pled guilty to counts one, two, and three. *See id.* As part of his sentence, the district court ordered Cobbs to pay restitution in an amount that "represents the total loss caused by all of the fraudulent activities charged in the indictment." *Id.* Cobbs appealed the order, contending that "because he pleaded guilty to, and was convicted of, only those offenses charged in the first three counts of the indictment, the district court exceeded its authority in ordering restitution in an amount equal to the total loss attributable to all of the offenses charged in the indictment." *Id.* On appeal, the government argued that Cobbs' conviction on the possession count supported the award of restitution. *See id.* at 1558. But the Eleventh Circuit found otherwise. Specifically, the court held that "the possession count to which Cobbs pleaded guilty will not support the district court's order of restitution because there was no loss caused by his mere possession of the access devices. It was only Cobb's *use* of the devices that resulted in loss to the victims." *Id.* Applying this logic, the court found that "the only offense that resulted in a loss is the one charged in Count two; that offense resulted in a $1516.00 loss to MBank." *Id.* Accordingly, the court found that $1516.00 was the limit of the restitution award that could be ordered by the district court. *See id.*

The Eleventh Circuit further developed its stance on the authority of a district court to order restitution in *United States v. Santos*, 93 F.3d 761 (11th Cir.1996). In *Santos*, the defendant was convicted of violating 18 U.S.C. § 922(g), which makes it unlawful for a convicted felon to possess firearms or ammunition. *See id.* As part of the sentence, the district court "ordered Santos to pay restitution for a robbery that the prosecution contends Santos committed just before he was arrested with the firearm," and Santos appealed the order. *Id.* The Eleventh Circuit found that the district court lacked the authority to order Santos to pay restitution in an amount equal to the amount taken in the robbery because Santos had not been convicted of the crime of robbery. *See id.*

Finally, in *United States v. McArthur*, the Eleventh Circuit addressed whether a defendant who had been convicted of possessing a firearm in a federal facility, but acquitted of assault and carrying a firearm in relation to a crime of violence, could be ordered to pay the medical costs of a shooting victim. *McArthur*, 108 F.3d 1350, 1352 (11th Cir.1997). Applying the standard enunciated in *Hughey*, the court held that the restitution order was improper. *See id.* at 1357. The court noted that the defendant "was convicted only of possessing a firearm in a federal facility and his possession occasioned no loss. Rather, his use of the firearm caused the injuries and expenses for which the court awarded restitution. Consequently, holding him responsible for the related costs was error." *Id.* (citing *Cobbs*, 967 F.2d at 1558–59).

In the instant case, defendant objects to the district court's order awarding restitution to the bank on the ground that the bank was not the "victim" of the crime for which defendant was convicted, i.e., possession of a firearm during the commission of a robbery. Instead, defendant asserts that the bank was the victim of the dismissed count of armed robbery. *See* Letter from Kearns to Poole of 11/19/01, at 1.

Defendant cites *United States v. Santos* for the proposition that "[a] defendant who pleads guilty to being a felon in possession of a firearm cannot be ordered to pay restitution for the money taken by the defendant during the robbery in which he possessed the firearm." *Id.* at 2 (citing *Santos*, 93 F.3d 761). In addition, defendant cites *McArthur* for the proposition "that restitution for the injuries to the victim of a shooting assault could not be ordered if the defendant was only convicted of the possession of the firearm." *Id.* at 2. (citing *McArthur*, 108 F.3d 1350). The court is of the opinion that both cases are distinguishable from the case at bar.

In *Santos*, the possession conviction was for possession of ammunition and a firearm by a known felon pursuant to 18 U.S.C. § 922(g). *See Santos*, 93 F.3d at 762. The possession conviction in *Santos*, unlike the instant case, had no nexus to the alleged bank robbery at issue in that case. Similarly, in *McArthur*, the defendant had been acquitted of the crime for which he was ordered to pay restitution. *See McArthur*, 108 F.3d at 1352. In the instant case, however, all of the elements of the robbery were elements of the offense for which defendant was convicted. *See* 18 U.S.C. § 924(c)(1)(A)(iii). In other words, by pleading guilty to the offense of possession of a firearm during the commission of a bank robbery, defendant admitted having committed the bank robbery. Accordingly, the court is satisfied that the robbery is included in the definition of "specific conduct that is the basis of the offense of conviction." *Hughey*, 495 U.S. at 413, 110 S.Ct. 1979 (footnote omitted); *Stone*, 948 F.2d at 704. Although the line of cases in this circuit descending from *Hughey* make it clear that a defendant may be ordered to pay restitution only for offenses for which he is convicted, they do not address the issue of whether restitution is appropriate for a use of a weapon offense that contains as a necessary element a violent felony such as a bank robbery. Such an issue is, in this court's opinion, a matter of first impression in this circuit. Because it is clear that robbery forms an element of the offense for which defendant was convicted, and because the robbery resulted in injury to the bank, this court concludes that it is proper to award restitution in this case.

Based on the foregoing analysis, the court ordered defendant to pay restitution to Branch Bank & Trust in the amount of $15,051.00. This opinion is meant to memorialize such ruling as it was made in open court on December 7, 2001.