[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 21, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11145
Non-Argument Calendar

_____

D. C. Docket No. 04-60107-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellant
Cross-Appellee,

versus

THOMAS J. FOLEY, III,
a.k.a. Thomas Richard,

Defendant-Appellee
Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(November 21, 2007)**

Before ANDERSON and PRYOR, Circuit Judges, and VINING,[*] District Judge.

PRYOR, Circuit Judge:

The main issues in this appeal concern the findings a district court must make when it calculates the amount of loss and number of victims under the Sentencing Guidelines for an offender convicted of fraud. The government appeals Thomas Foley's sentence of 75 months of imprisonment and two years of supervised release for mail fraud, 18 U.S.C. § 1341, and money laundering, 18 U.S.C. § 1957, in a Ponzi-type scheme involving investments in script automated transaction machines. The government argues that the district court erred when it calculated Foley's amount of loss by deferring to the forfeiture verdict of the jury, found a number of victims based on preliminary responses to the probation office, and declined to apply an enhancement for obstruction of justice. Foley cross-appeals and raises arguments about forfeiture, restitution, and prosecutorial misconduct. In the appeal by the government, we vacate Foley's sentence and remand for resentencing because the district court erred when it failed to make independent findings of the amount of loss and number of victims and declined to rule on the obstruction of justice enhancement. Because Foley's arguments in his

[*] Honorable Robert L. Vining, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

2

cross-appeal are meritless, we affirm Foley's convictions and the orders of forfeiture and restitution.

## I. BACKGROUND

Foley was the owner and president of Global Vending, Inc., a vendor of script ATMs. Global solicited investors through the mail. Investors were told that they could purchase a machine at a cost of up to $5000, and, in return, would receive $.80 per transaction whenever the machine was used.

Global eventually oversold investments and assigned several—in some cases more than 80—investors to the same machine, contrary to the promise that each investor would be the sole owner of a machine. Of the nearly 350 investors who sent money to Global, only 20 to 25 maintained sole ownership of their machines. As the business spiraled out of control, Global began to pay investor "returns" not from ATM transaction fees but from payments that Global received from newer investors. Global later created a "shared location" program for its new investors, in which it promised investors that they would share machines owned by Global with other investors for four to six weeks before receiving their own machines. These investors also were paid returns out of the principal investments of other investors.

Foley enjoyed an extravagant personal lifestyle at the expense of the accounts of Global. After investors complained, agents of the Federal Bureau of Investigation searched offices of Global and Foley's home and froze Foley's accounts. Foley transferred $800,000 from an account that the FBI had not frozen into his father's bank account and enlisted his wife and sister to launder those funds.

A jury convicted Foley of two counts of mail fraud, 18 U.S.C. § 1341, and eleven counts of money laundering, id. § 1957, but the jury acquitted Foley of wire fraud and conspiracy charges. The jury also returned a special forfeiture verdict that found that the amount of proceeds from the mail fraud was $2,000,000.

At the sentencing hearing, Foley did not object to the factual allegations contained in the presentence investigation report. The district court adopted, over the objection of the government, the forfeiture verdict of the jury as amount of loss under the Guidelines and stated that the jury had "made a specific finding" that the court found "very difficult" to increase. The district court next calculated, over the objection of the government, the number of victims as more than 50 but less than 250. The court accepted 158—the number of people who had responded to a letter from the probation office regarding restitution—as a "benchmark." The parties also urged the court to make a finding about the enhancement for obstruction of

justice requested by the government. The district court declined to apply the enhancement and explained that it would adopt a portion of the presentence investigation report, in which the probation officer stated that he would defer to the district court on the obstruction of justice issue.

In its complete Guidelines calculations, the court used a base offense level of 7 for the grouped counts of mail fraud. United States Sentencing Guidelines § 2B1.1(a)(1) (Nov. 2004). The court enhanced the offense level by 16 levels for the amount of loss, id. § 2B1.1(b)(1)(I); by 4 levels for the number of victims, id. § 2B1.1(b)(2)(B); by 1 level for money laundering, id. § 2S1.1(b)(2)(A), and by 2 levels for Foley's organizer role, id. § 3B1.1(c). The total offense level was 30, Foley's criminal history category was I, and the Guidelines sentencing range was 97 to 121 months. The district court concluded that the Guidelines range "overstate[d] the necessity for incarceration," and imposed a sentence of 75 months of imprisonment and two years of supervised release.

Three months later, the district court conducted a restitution hearing. The district court accepted the list of victims and loss amounts submitted by the government, and ordered restitution to 343 individuals in the amount of $12,635,114.29. The district court stayed the order of restitution pending this appeal.

## II. STANDARDS OF REVIEW

Several standards of review govern this appeal. We review de novo the interpretation and application of the Guidelines, and we review underlying factual findings for clear error. United States v. McVay, 447 F.3d 1348, 1352–53 (11th Cir. 2006). Whether a person is a victim, both under the Guidelines and under the Mandatory Victims' Restitution Act, is a legal conclusion we review de novo. United States v. Robertson, 493 F.3d 1322, 1334 (11th Cir. 2007) (citing United States v. De La Fuente, 353 F.3d 766, 771 (9th Cir. 2003)). We review for clear error the underlying finding that the defendant's conduct was the proximate cause of the harm suffered by the victim. Id. (citing De La Fuente, 353 F.3d at 772). We review de novo the legality of an order of forfeiture. United States v. Hasson, 333 F.3d 1264, 1275 (11th Cir. 2003). We review de novo the legality of an order of restitution, id. (citing United States v. Cobbs, 967 F.2d 1555, 1556 (11th Cir. 1992) (per curiam), and we review a factual finding regarding the specific amount of restitution for clear error, id. (citing United States v. Vaghela, 169 F.3d 729, 736 n.6 (11th Cir. 1999)). We review the denial of a motion for a mistrial for abuse of discretion. United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003) (citing United States v. Diaz, 248 F.3d 1065, 1101 (11th Cir. 2001)).

### III. DISCUSSION

Our discussion is divided into two parts. We first address the appeal by the government of Foley's sentence. We next address Foley's cross-appeal of his convictions, forfeiture, and restitution. We conclude that the arguments of the government have merit but Foley's arguments do not.

*A. The Appeal by the Government*

The government argues that the district court erred when it calculated the loss amount attributable to Foley, calculated the number of victims, and declined to make a finding about obstruction of justice. If these arguments are meritorious, we must consider whether Foley can establish that the errors were harmless. We discuss each argument in turn.

1. The District Court Erred in Its Calculation of the Amount of Loss.

The government argues that the district court misapplied the Guidelines when it calculated the amount of loss, U.S.S.G. § 2B1.1(b)(1), by deferring to the $2,000,000 forfeiture verdict returned by the jury. The government argues that the court was required to make an independent finding about loss, which the government contends exceeded $7,000,000. We agree.

Our decision in United States v. Hamaker, 455 F.3d 1316 (11th Cir. 2006), resolves this issue. We explained in Hamaker that, in calculating the amount of

7

loss, the Guidelines require a district court to take into account "not merely the charged conduct, but rather all 'relevant conduct,' in calculating a defendant's offense level." Id. at 1336. The district court in Hamaker rested its finding on the forfeiture verdict, as occurred in this appeal.

We explained that the district court in Hamaker erred in three respects. First, forfeiture and loss "require distinct calculations and need not be calculated identically," id. at 1337, even though they are subject to the same burden of proof, which is preponderance of the evidence, id. at 1337 & n.21. "Because '[f]orfeiture is a penalty imposed on a criminal independent of any loss to the crime victim,' the amount of the jury's forfeiture verdict is not necessarily the correct measure of loss for sentencing purposes, and the procedures for arriving at a forfeiture amount and calculating loss are distinct." Id. (quoting United States v. Dawkins, 202 F.3d 711, 715 (4th Cir. 2000) (internal quotation marks omitted)) (alteration in original). Second, the district court erroneously speculated that the forfeiture verdict necessarily meant that the jury had found the defendant not culpable for certain charged acts. See id. Third, the district court abdicated its responsibility "to make independent findings establishing the factual basis for its Guidelines calculations." Id. at 1338 (emphasis omitted).

Our decision in <u>Hamaker</u> compels the conclusion that the district court erred. The district court adopted the forfeiture verdict of the jury as the amount of loss for the purposes of the Guidelines calculation and explained only that the court found it "very difficult . . . to increase the amount of loss" above the amount that the jury returned. The court failed to take into account all relevant conduct or explain why certain conduct was not relevant, failed to understand the difference between forfeiture and loss, and abdicated its responsibility to make independent findings under the Guidelines.

2. The District Court Erred in Its Finding of the Number of Victims.

The government argues that the district court misapplied the Guidelines when it calculated the number of victims. U.S.S.G. § 2B1.1(b)(2). For its finding of the number of victims, the district court adopted the number of individuals who had responded to a letter sent about restitution by the probation office, which was 158. Foley argued that the court should base its calculation on the number of victims who testified at trial. The government urged the court to use a number greater than 250, because Global had nearly 400 investors and the vast majority of them had been assigned to shared ATMs. We agree with the government that the district court erred.

9

The district court erred when it adopted the number of responses received by the probation office as the number of victims for sentencing purposes. As explained earlier, the district court did not make an independent finding on the amount of loss, and the number of victims is defined in relation to the loss calculation. A victim is "any person who sustained any part of the actual loss" calculated under the Guidelines. U.S.S.G. § 2B1.1 cmt. n.1. The district court accepted the 158 responses to the probation office letter as a "benchmark" for calculating the number of victims, but the number of people who responded to the letter from the probation office about restitution did not establish how many people sustained the loss attributable to Foley. The district court also recognized that there were individuals the probation office had not yet located.

The district court must make independent findings to support its calculation of loss. See Hamaker, 455 F.3d at 1338. The district court did not attempt to connect the number of victims to the loss calculation that it made, and it did not "establish[] the factual basis for its Guidelines calculations." Id.

3. The District Court Erred When It Declined to Make a Finding About the Obstruction of Justice Enhancement.

The government argues that the district court erred when it declined to make a finding about the obstruction of justice enhancement. The district court purported to make a finding when it adopted the portion of the presentence

10

investigation report in which the probation officer stated that he would defer to the district court on this issue. We again agree with the government that the district court erred.

The district court abdicated its duty to rule on the obstruction of justice enhancement. The government sought the obstruction enhancement based at least in part on Foley's alleged perjury at trial and his attempt to conceal his assets from the FBI investigation. See U.S.S.G. § 3C1.1; United States v. Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993). The presentence investigation report acknowledged that there was an unresolved question about the application of this enhancement, and the parties argued about it at the sentencing hearing. The Federal Rules of Criminal Procedure state that a sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). The record reflects that when it declined to apply the enhancement, the district court said it adopted a part of the presentence report, but that report deferred to the judgment of the district court. This abdication was error.

11

## 4.  The Sentencing Errors Were Not Harmless.

Although the district court erred when it applied the advisory sentencing Guidelines, we must disregard the errors if they were harmless.  United States v. Mathenia, 409 F.3d 1289, 1291–92 (11th Cir. 2005) (per curiam).  The errors are harmless if they did not substantially affect Foley's sentence, and Foley has the burden of establishing harmlessness.  United States v. Williams, 456 F.3d 1353, 1371 (11th Cir. 2006), cert. denied, 127 S. Ct. 3040 (2007).  Foley has not satisfied his burden.

Foley cannot establish that a properly calculated Guidelines range would not have substantially affected his sentence.  The potential effect of the cumulative errors of the district court regarding the Guidelines calculations was eight offense levels, which would have raised the bottom of the Guidelines range nearly 250 percent from 97 months to 235 months.  Foley argues that, because the district court sentenced below the lower range it calculated, it also would have sentenced below any higher range.  This assertion may be true, but it does not follow that the court would have imposed the same sentence had the court understood that a different sentencing range applied.  The properly calculated sentencing range is one of the factors a court must consider, 18 U.S.C. § 3553(a)(4)(A), and a 250-percent higher range ordinarily would substantially affect the final sentence.  We

12

cannot say "with fair assurance," Mathenia, 409 F.3d at 1292 (quoting United

States v. Hornaday, 392 F.3d 1306, 1315 (11th Cir. 2004)) (internal quotation mark

omitted), that the court would have imposed a sentence of 32 percent of the low

end of the range because it imposed a sentence of 77 percent of the low end of an

improperly calculated range. Because we cannot say that these errors were

harmless, we must vacate Foley's sentence and remand for resentencing.

### B. Foley's Cross Appeal

In his cross-appeal, Foley argues that his order of forfeiture was defective,

the district court erred when it included restitution for acquitted conduct and for

harm that was not proved by a preponderance of the evidence, and four instances

of prosecutorial misconduct entitled him to a mistrial. We discuss each issue in

turn. Foley's arguments all fail.

### 1. Forfeiture

Foley argues that the district court should not have forfeited the proceeds of

his mail fraud because the fraud did not "affect a financial institution." He cites a

statute in support of this argument, see 18 U.S.C. § 982(a)(2)(A), but he was not

charged under that statute. The third superseding indictment sought forfeiture

based on other statutes, see 28 U.S.C. § 2461 and 18 U.S.C. § 981(a)(1)(C), which

authorize forfeiture of proceeds from "specified unlawful activity," including mail

13

fraud, and contain no requirement about "affecting a financial institution" id.; see also 18 U.S.C. § 1956(c)(7) (defining "specified unlawful activity" and incorporating the offenses listed in 18 U.S.C. § 1961(1), which include mail fraud, into this definition). Because Foley does not argue that forfeiture was improper under section 981, the statute upon which the government sought forfeiture, Foley's argument is frivolous. Cf. United States v. Jennings, 487 F.3d 564, 584–85 (8th Cir. 2007) (holding that 28 U.S.C. § 2461(c) authorizes criminal forfeiture of proceeds from general mail fraud via 18 U.S.C. § 981(a)(1)(C)); accord United States v. Edelkind, 467 F.3d 791, 799 (1st Cir. 2006); United States v. Vampire Nation, 451 F.3d 189, 200 (3d Cir. 2006)

## 2. Restitution

Foley makes two arguments regarding restitution. First, Foley argues that the district court erred when it calculated restitution based in part on acquitted conduct. Second, Foley argues that the government did not prove by a preponderance of the evidence that the victims of his offense were "directly harmed" by his conduct.

### a. Restitution for Acquitted Conduct

The Mandatory Victims Restitution Act, 18 U.S.C. §§ 3613A, 3663A, governs the restitution order. Under the Restitution Act, restitution for mail or

14

wire fraud is not "limited to the specific act of fraud underlying the mailing or use of the wires for which the defendant is convicted," but is available for any victim of "the entire scheme or artifice to defraud furthered by the mailing or use of the wires." Hasson, 333 F.3d at 1275 n.13; see also United States v. Dickerson, 370 F.3d 1330, 1338–41 (11th Cir. 2004). The Restitution Act defines "victim" as "any person directly harmed by the defendant's conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2).

Foley's reliance on our decision in United States v. McArthur, 108 F.3d 1350 (11th Cir. 1997), to support his argument that restitution may not be ordered for acquitted conduct, is misplaced. In McArthur, we interpreted an earlier provision of the Victim and Witness Protection Act, 18 U.S.C. §§ 3663–64, which allowed a court to order restitution "to any victim of such offense" for which the defendant was convicted. Id. at 1357 & n.18 (discussing 18 U.S.C. § 3663(a)(1)(A) (1988)). Both the Protection Act, which was amended in 1990, Pub. L. 101-647, § 2509, 104 Stat. 4789, 4863 (1990), and the Restitution Act, which was enacted in 1996, now define the term "victim" more broadly:

> [T]he term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any

15

person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2).

The Restitution Act provides relief for victims of a scheme or conspiracy so long as the defendant was convicted of "an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity."  Id.; see also United States v. Washington, 434 F.3d 1265, 1269 (11th Cir. 2006);  Hasson, 333 F.3d at 1275 n.13.  Foley was convicted of mail fraud, one of the elements of which is "intentional participation in a scheme to defraud a person of money or property." United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (citation omitted). The district court was correct to award restitution for any victim of the scheme furthered by Foley's offense of mail fraud.

### b.  Direct Harm to the Victims

Foley's argument that the government did not prove by a preponderance of the evidence that the alleged victims were "directly harmed" by Foley's conduct also fails.  Foley argues that not every investor in Global necessarily was harmed. The government responds that all investors, other than those whose money was returned to them in full, "were fraud victims nonetheless because Foley's fraud scheme jeopardized their investment" and the entire Global enterprise was

16

fraudulent. We agree with the government that there is substantial evidence that Foley harmed all investors.

The district court did not clearly err when it found that all the investors identified by the government were directly harmed by Foley's conduct. The government deducted the returns and repayments that victims received from their investments from the restitution amount. See 18 U.S.C. § 3663A(b)(1)(B). Even if some investors who did not share machines were included in the restitution calculation, it is undisputed that Foley operated a scheme in which the money invested by later investors was used to pay earlier investors. That scheme deceived all investors. Although some investors entered the shared location program knowingly, they too were defrauded when that program was not executed as promised. Substantial evidence supports the finding of the district court, and we are not "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985).

### 3. Prosecutorial Misconduct

Foley contends that four instances of prosecutorial misconduct during his trial entitled him to a mistrial. "Prosecutorial misconduct requires a new trial only if we find the remarks (1) were improper and (2) prejudiced the defendant's

substantive rights." United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998) (internal quotation marks omitted).  Based on our review of the four comments, we conclude that the district court did not err when it denied Foley's motions for a mistrial.

### a.  Cross-Examination of Herbert Lawrence

Foley first argues that he was prejudiced by an improper question that the prosecutor asked his character witness, Herbert Lawrence, but even if the question was improper it did not prejudice Foley.  During cross-examination, the prosecutor asked whether it would change Lawrence's opinion of Foley if he knew that Foley had used business funds to pay personal expenses and not reported that fact on his tax return.  Foley argues that the government did not proffer a factual basis for the allegation that Foley committed tax fraud.  When a witness has testified about a defendant's good character, it is permissible to inquire upon cross-examination about the defendant's prior misconduct so long as it is relevant and the government has "some good-faith factual basis for the incidents inquired about." United States v. Wells, 525 F.2d 974, 977 (5th Cir. 1976).

There are problems with Foley's argument.  First, the district court sustained Foley's objection to the question as irrelevant, after the government proffered its good-faith basis for the inquiry at sidebar.  See id. (approving of such a

18

procedure). Second, even if the question was improper, Foley cannot establish prejudice because this brief and isolated reference was unlikely to have affected the jury. The question did little to debilitate Lawrence's testimony about Foley's good character in the face of strong evidence of Foley's guilt.

### b. Closing Argument: Burden Shifting

Foley next complains that the prosecutor shifted the burden of proof during closing argument, but Foley's failure to object means that we review for plain error. "For there to be plain error, there must (1) be error, (2) that is plain, (3) that affects the substantial rights of the party, and (4) that seriously affects the fairness, integrity, or public reputation of a judicial proceeding." Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1179 (11th Cir. 2002). Foley cannot satisfy this burden.

Foley complains about two parts of the prosecutor's argument. First, during his initial closing argument, the prosecutor argued that the jury would have to choose whether it would believe the government's version of the events or Foley's version:

> Like I said earlier, we bear the burden of proof. It's up to us to prove to you beyond a reasonable doubt the government's case. The defendant doesn't have to put on a case, doesn't have to say anything, doesn't have to put on any witnesses, certainly doesn't have to testify himself. In this case, obviously the defendant did put on a case and he did testify. He put out there his story, his explanation.

19

So, as the jury, you now are left to choose. Do you choose the government's case, the government's evidence and facts and witnesses, Global['s] . . . own records; or do you take the story of the one person who has the most to gain by coming in here and making up a story?

Let's be clear, if you are going to believe what the defendant says happened, then you have to believe that all the investors are lying.

Second, during his rebuttal closing argument, the prosecutor asked the jury, "[D]id you see one investor, one called by Mr. Foley, who came in here and said there was a shared location program before July of 2003?" The prosecutor made this statement after he reminded the jury that the government bore the burden of proof.

Foley's argument fails. Both of these comments in closing arguments were made in the context of the prosecutor's accurate reminder to the jury about the burden of proof. In that light, Foley cannot establish plain error.

c. Closing Argument: Attack on Foley's Counsel

Foley next argues that the district court erred when it denied him a mistrial after the prosecutor made a remark during closing argument that Foley contends was an attempt to impugn the integrity of his counsel. During the closing argument, the prosecutor stated, "Tom Foley himself, when the FBI interviewed him, now this is months ago, before he has had a chance to hear the whole trial, before he has had a chance to meet with his lawyer . . . ." Foley argues that the remark suggests that Foley changed his story after he met with his lawyer.

20

This argument fails because the remark, when read in context, does not question the integrity of Foley's attorney. The prosecutor's remark did not allege or even imply that Foley's lawyer suborned perjury. See United States v. O'Keefe, 461 F.3d 1338, 1344, 1350 (11th Cir. 2006) (concluding that the prosecutor's remark that defense counsel had "spoon-fed" a bogus theory of the case for the defendant to "regurgitate[]" on the stand was improper, but affirming because the defendant did not establish prejudice). After the challenged remark, the prosecutor argued that Foley had the opportunity to review discovery materials held by the government before Foley changed the story he had told the FBI. The court sustained Foley's objection to the argument and instructed the jury to disregard the remark. Foley cannot establish that this remark was objectionable or prejudicial.

### d. Closing Argument: Attack on Foley

Foley argues that the district court erred when it did not grant him a mistrial after the prosecutor compared Foley's conduct to that of other criminals, but Foley cannot show prejudice. During closing argument, the prosecutor responded to Foley's arguments about improper conduct of the agents of the Federal Bureau of Investigation in Foley's case and stated that the agents investigated Foley's case as they did any other case. The prosecutor finished this commentary with the remark, "That's how they treat drug dealers, that's how they treat gun runners." The

district court struck the comment sua sponte and reminded the jury that Foley was only on trial for the crimes charged in the indictment.

We review the remark "in the context of the entire trial in light of any curative instruction." United States v. Abraham, 386 F.3d 1033, 1036 (11th Cir. 2004). The jury was immediately instructed to disregard the remark, and Foley has not explained how the remark affected the outcome of his trial.

### e. Cumulative Error

Finally, Foley argues that the cumulative effect of the alleged errors entitled him to a new trial, but this argument also fails. As discussed above, it is debatable whether at least one, if not more, of the comments was improper, and Foley cannot establish that the combined errors affected his substantial rights. The jury acquitted Foley of several counts, which suggests that the jury was not prejudiced against Foley and returned its verdict based on the evidence.

### III. CONCLUSION

The orders of forfeiture and restitution are **AFFIRMED**. Foley's convictions are **AFFIRMED**. Foley's sentence for mail fraud and money laundering is **VACATED** and **REMANDED** for resentencing.