[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13518
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-14039-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANNIEL GOMEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 16, 2009)

Before DUBINA, Chief Judge, TJOFLAT and PRYOR, Circuit Judges.

PER CURIAM:

Anniel Gomez appeals his convictions and sentence of 365 months of

imprisonment for conspiracy to maintain a residence for manufacturing and distributing marijuana, 21 U.S.C. § 846, and conspiracy to manufacture and distribute 100 or more marijuana plants, 21 U.S.C. § 846. Gomez argues that the district court erred when it denied his motion to withdraw his guilty plea, the district court erred in its findings of fact related to his sentence, and his sentence is unreasonable. We affirm.

## I. BACKGROUND

Gomez and several cohorts conspired to grow and harvest marijuana in six houses located in St. Lucie County, Florida. During the conspiracy, Gomez and his brother, Aznia Miranda, visited one grow house maintained by Gomez's uncle, Jesus Miranda, at 2631 Southwest Feather Terrace. Miranda demanded money from Gomez and their discussion grew heated but eventually ended. Later that evening, Miranda resumed his argument with Gomez in the kitchen, and their disagreement escalated into a physical fight that ended when Gomez stabbed and killed Miranda. Gomez attempted to eradicate any evidence that would link him to the murder by setting fire to the house.

Police learned of the conspiracy and raided the grow houses, where they discovered over 500 marijuana plants in various stages of growth. A further investigation revealed that Gomez and his cohorts harvested several crops of

2

marijuana in the six houses.  When police arrived the Southwest Feather Terrace address, they discovered a partially burned house and a charred body that was later identified as Jesus Miranda.

Gomez was arrested and charged for conspiracy to maintain a residence to manufacture or distribute marijuana, 21 U.S.C. § 846, and conspiracy to manufacture or distribute 100 or more marijuana plants, id.  Gomez waived prosecution by indictment and pleaded guilty to both conspiracy charges.  Gomez avoided prosecution for the murder but agreed that the murder would potentially affect the calculation of his sentence.   The plea agreement provided that the district court would sentence Gomez after the probation office conducted an investigation and submitted a presentence investigation report to the court.  The agreement stated that the prosecutor "reserve[d] the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background."

At the change of plea hearing, Gomez acknowledged that he had discussed the plea agreement with counsel, he was satisfied with counsel's representation, and he was knowingly, intelligently, and voluntarily pleading guilty.  The government provided a factual basis for the plea and stated that "[t]he parties agree

3

that there may be guidelines consequences for the death of Miranda. However, the parties reserve all rights to argue the application of the guidelines at sentencing." Gomez "agree[d] to the factual basis as stated" and "stipulate[d] that" the conspiracy involved "over 100 [marijuana] plants." Gomez thereafter acknowledged that the district court would impose a sentence after it received the presentence report and considered any challenges to that report but the court could impose a sentence "different from any estimate [Gomez]'s attorney may have given . . . ." After a magistrate judge stated that he would recommend that the district court accept Gomez's guilty plea, the judge reminded Gomez that he would be interviewed by a probation officer to prepare the presentence investigation report, an attorney could be present for that interview, and Gomez could object to the report and argue those objections at sentencing.

The presentence investigation report provided a base offense level of 38 for an offense involving a second degree murder. 18 U.S.C. § 1111; United States Sentencing Guidelines § 2A1.2(a) (Nov. 2006). The report reduced the base level by three points for acceptance of responsibility. Id. § 3E1.1. With a criminal history of I, the report provided a sentencing range for Gomez between 168 and 210 months of imprisonment.

The report contained details about the murder of Jesus Miranda. The report

stated that after Miranda overpowered Gomez in the kitchen, Gomez grabbed a large kitchen knife off the counter and stabbed Miranda five times in the chest and back. Miranda fell to the floor and Gomez again stabbed Miranda in the chest. After Jesus Miranda died, Gomez and his brother, Aznia Miranda, carried Jesus Miranda's body to a bathtub and attempted to clean the kitchen floor, but when they were unsuccessful, Gomez used a tank of gas to start three separate fires inside Jesus Miranda's house. The fire damaged, but did not destroy, the house. The report also stated that several of Gomez's cohorts, including Lazro Valdes, told federal officers that Gomez had admitted killing Jesus Miranda.

The government objected to the presentence report on two grounds. First, the government argued that Gomez's statement was not sufficiently detailed to warrant a reduction for acceptance of responsibility. Second, the government argued that Gomez should receive a two point enhancement for obstruction of justice because he had lied about his use of cocaine, threatened his brother after he became a government witness, destroyed evidence, and provided false information to law enforcement during its investigation of the drug conspiracy and murder.

Gomez's attorney, Jason Kriess, filed a motion to withdraw from the representation and stated that he had developed a conflict with Gomez. The district court denied the motion. Kriess filed a second motion to withdraw on the basis

5

that Gomez had instructed him to cease work in the case and Kriess believed that Gomez planned to file a complaint with the State Bar and file a complaint of ineffective assistance of counsel. After a hearing, at which the government explained the extensive work Kriess had performed on behalf of Gomez, the district court denied Kriess's second motion to withdraw.

Gomez objected to the presentence report and responded to the objections of the government. Gomez argued that Jesus Miranda's murder should be treated as voluntary manslaughter, which would reduce his base offense level to 29. 18 U.S.C. § 1112; U.S.S.G. § 2A1.3. Gomez also argued that he was entitled to a reduction based on his statement accepting responsibility for the conspiracies, and he objected to an enhancement for obstruction of justice.

Gomez moved to withdraw his guilty plea. Gomez argued that his plea was not made freely and voluntarily or knowingly and intelligently because he did not understand the consequences of his guilty plea or the stipulations that accompanied the plea. Kriess stated that he believed that Gomez would testify that he was coerced by Kriess to plead guilty. The district court allowed Kriess to withdraw and appointed Wilbur Chaney to represent Gomez.

At the evidentiary hearing, Gomez refused to waive his attorney-client privilege and testified that he agreed to "go to trial for the dead person but not for

6

the marijuana. For the marijuana I plead guilty and that is clear. I want to be sentenced for the marijuana and then we will fight the murder." Gomez alleged that Kriess had failed to tell him that he could be punished for the murder when he pleaded guilty to the drug charges and, if he had known, he would not have pleaded guilty. On cross-examination, Gomez acknowledged that he had agreed with the factual basis provided by the government, which included information about the death of his uncle, and he understood that "there were consequences, or there might be consequences from the homicide and death" of his uncle. Gomez argued that Kriess did not explain how the murder would affect his sentence. On redirect examination, Gomez explained that he accepted the factual basis provided by the government with the understanding that he was admitting guilt for the drugs but not the murder.

The magistrate judge who had accepted Gomez's guilty plea found that Gomez failed to establish a fair and just reason to withdraw the plea. The magistrate judge stated that Gomez had the close assistance of Kriess; the plea colloquy established that Gomez had knowingly and voluntarily pleaded guilty; denying the motion to withdraw would avoid the need for a trial; and prejudice to the government was not a factor in his decision. The magistrate judge recommended that the district court deny Gomez's motion to withdraw his guilty

plea.

Gomez objected to the recommendation of the magistrate judge. Gomez argued that Kriess told him to sign the agreement and Kriess failed to explain that Gomez would accept responsibility for Jesus Miranda's murder. The district court adopted the recommendation and denied Gomez's motion to withdraw his plea.

At the sentencing hearing, Gomez argued that the facts proffered by the government established that he committed voluntary manslaughter. The government offered two witnesses to support their argument that the crime was second degree murder. Aznia Miranda testified that Gomez and Jesus Miranda began to fistfight, but when Miranda began to choke Gomez, Gomez grabbed a knife and stabbed Miranda twice in the back. When Miranda fell to the floor, Gomez dropped the knife and crouched down next to Miranda. Miranda tried to hit Gomez and asked "why are you doing this to me?[,]" to which Gomez responded "you deserve it," and stabbed Miranda in the chest. Later, Gomez and Aznia Miranda fled to Mexico with Lazaro Valdes. Aznia Miranda overheard Gomez tell Valdes that he murdered Jesus Miranda. Valdes testified and verified that Gomez had admitted killing his uncle.

Gomez testified and denied any involvement in the murder or the fire and asserted that he learned about the crimes when he was questioned by the police.

8

Gomez stated that he was not present when his uncle was killed and that his brother, Aznia Miranda, had concocted the story to protect himself. Gomez denied that he confessed committing the murder, but he admitted that he had told his mother he had killed Jesus Miranda to protect Aznia Miranda.

The district court found that it was "abundantly clear . . . by overwhelming evidence" that Gomez had not accepted responsibility for the murder. The district court ruled that Gomez had obstructed justice "by lying" and cited to evidence that Gomez had failed to give a "complete truthful statement" about the murder; he had "taken inconsistent positions as to his involvement"; and he had "repeatedly lied on the stand over and over against in contradiction to the overwhelming evidence to the contrary . . . ." The district court also ruled that Gomez's misconduct was second degree murder.

The district court ruled that Gomez's base offense level was 38 and increased that level by two points for obstruction of justice, which provided a guideline range between 292 and 365 months. After the district court considered the presentence report, the guidelines, and the statutory factors, the court sentenced Gomez to 365 months for conspiracy to manufacture and distribute 100 or more marijuana plants and to a concurrent term of 240 months for conspiracy to manufacture or distribute marijuana, followed by five years of supervised release.

The court explained that it imposed a sentence at the high end of the guideline range to "deter future criminal activity and reflect the seriousness of the crime."

## II. STANDARDS OF REVIEW

We apply three standards of review in this case. We review for abuse of discretion the denial of a motion to withdraw a guilty plea. United States v. McCarty, 99 F.3d 383, 385 (11th Cir. 1996) (per curiam). "There is no abuse of discretion unless the denial is 'arbitrary or unreasonable.'" United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006) (per curiam). We review the interpretation and application of the Guidelines de novo and related findings of fact for clear error. United States v. Foley, 508 F.3d 627, 632 (11th Cir. 2007). We review the reasonableness of a criminal sentence for an abuse of discretion. Gall v. United States, 128 S. Ct. 586, 594, 596–97 (2007). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam).

## III. DISCUSSION

Gomez raises three challenges to his conviction and sentence. First, Gomez contends that he was entitled to withdraw his guilty plea. Second, Gomez challenges findings of fact regarding the calculation of his sentence. Third, Gomez

10

challenges the reasonableness of his sentence. We address each argument in turn.

*A. Gomez Failed to Provide a Fair and Just Reason to Withdraw His Guilty Plea.*

A defendant does not have an absolute right to withdraw his guilty plea. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). After the district court accepts the guilty plea, but before it imposes a sentence, the defendant may withdraw his plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). To determine whether a defendant has established "a fair and just reason" to withdraw the plea, the district court may consider the circumstances regarding the plea, which includes whether the defendant had close assistance of counsel; whether the plea was knowing and voluntary; whether denying the motion would conserve judicial resources; and whether the government would be prejudiced if the defendant were allowed to withdraw his plea. United States v. Buckles, 843 F.2d 469, 471–72 (11th Cir. 1988).

The district court did not abuse its discretion by denying Gomez's motion to withdraw his guilty plea. Gomez argued that Kriess failed to inform him that the murder would be included in the calculation of his sentence, but Gomez admitted during his plea colloquy that the murder carried "guideline consequences." See Medlock, 12 F.3d at 187. Gomez failed to provide the court with a just reason to

11

withdraw his guilty plea.

*B. The District Court Did Not Clearly Err In Its Factual Findings.*

Gomez challenges three findings of fact related to his sentence. First, Gomez contends that the facts supported a base offense level for voluntary manslaughter rather than second degree murder. Second, Gomez argues that he did not obstruct justice. Third, Gomez argues that he accepted responsibility. These arguments fail.

The record supports the factual findings of the district court. Testimony at the sentencing hearing established that Gomez stabbed Jesus Miranda several times and intended to kill him. Compare 18 U.S.C. § 1112(a) (delimiting voluntary manslaughter to acts committed in the heat of passion), with id. § 1111(a) (delimiting second degree murder to acts that are deliberate or committed with indifference to the consequences). Gomez's perjury about Miranda's murder also supported the enhancement for obstruction of justice and the denial of a reduction for acceptance of responsibility. See United States v. Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993); United States v. Lewis, 115 F.3d 1531, 1537 (11th Cir. 1997) (per curiam).

*C. Gomez's Sentence Is Reasonable.*

The district court did not abuse its discretion by imposing a sentence at the

12

high end of the guideline range.  The district court correctly calculated the advisory guideline range and reasonably concluded that a sentence of 365 months was necessary to deter future crime and to reflect the seriousness of Gomez's crimes. See 18 U.S.C. § 3553(a); Gall, 128 S. Ct. at 597.  Gomez's sentence is reasonable.

## IV. CONCLUSION

The denial of Gomez's motion to withdraw his guilty plea and Gomez's sentences are **AFFIRMED.**