[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14407
Non-Argument Calendar
_____

D.C. Docket No. 8:14-cr-00049-EAK-EAJ-1

UNITED STATES OF AMERICA,

                                                              Plaintiff-Appellee,

versus

CHARVESTER D. ANTHONY,

                                                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 27, 2017)

Before JORDAN, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Charvester Anthony appeals his convictions and sentences for receiving stolen U.S. Treasury checks, in violation of 18 U.S.C. § 641.  Anthony asserts three issues on appeal, which we address in turn.  After review, we affirm Anthony's convictions and custodial sentence, and vacate the restitution order and remand for further proceedings.

## I.  DISCUSSION

### A.  18 U.S.C. § 641

Anthony first asserts the Government failed to prove at trial that he dealt in stolen treasury checks.  He contends property taken from the government by fraud is not property taken by "stealing," as that term is used in 18 U.S.C. § 641, and in any event, he asserts the Government submitted insufficient evidence that he knew the treasury checks were stolen.

A defendant may be convicted for receiving stolen government property under § 641 if the government establishes that: (1) the money described in the indictment belonged to the United States or an agency thereof; (2) the defendant received the property knowing it to have been embezzled, stolen, purloined, or converted; and (3) the defendant did so knowingly with intent to deprive the government of the money.  18 U.S.C. § 641.  "[T]o establish the requisite criminal intent, the government need only prove that [the] defendant[] knowingly used government property for [his] own purpose[ ] in a manner that deprived the

2

government of the use of the property." *United States v. Lanier*, 920 F.2d 887, 895 (11th Cir. 1991).

As an initial matter, Anthony's argument that his conduct falls outside § 641's prescriptive scope is unavailing.[1] We have upheld convictions under § 641 where defendants procured U.S. treasury checks by filing false tax filings. In *United States v. Wilson*, 788 F.3d 1298 (11th Cir. 2015), Wilson operated a Florida check-cashing business and deposited a number of fraudulent tax refund checks into his business account. *Id.* at 1305. We affirmed Wilson's six convictions under § 641. *Id.* at 1309-10.

Moreover, the evidence presented at trial, when taken in the light most favorable to the Government, was sufficient for a reasonable jury to infer that Anthony knew the checks were fraudulent.[2] First, Anthony claimed he had matching IDs for each check he cashed, but he failed to produce them for authorities. Second, five victims testified they did not file the tax returns and the signatures on the back of the refund checks were not theirs. Third, the

---

[1] The interpretation of a statute is a question of law that is reviewed *de novo*. *United States v. Murrell*, 368 F.3d 1283, 1285 (11th Cir. 2004).

[2] We review the sufficiency of the evidence *de novo*. *United States v. Rutgerson*, 822 F.3d 1223, 1231 (11th Cir. 2016). We are required to affirm a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2010). We view all the evidence in the light most favorable to the government and draw all reasonable inferences and credibility choices in favor of the jury's verdict. *Id.*

investigating officer testified that Anthony told him that the checks were stolen, that he was "stealing from thieves," and that he charged more for stolen checks. Fourth, Anthony did not provide an explanation as to how the IDs he claimed he reviewed from the fraudulent filers matched the names on the checks.  Lastly, Anthony deposited all of the fraudulent checks by ATM, and therefore, avoided signing the checks himself.  Thus, a reasonable jury could infer from the evidence that Anthony had knowledge that the checks were stolen.

Finally, the jury had the ability to assess Anthony's credibility, and we will assume that the jury answered all credibility questions in a manner supporting the verdict.  *See United States v. Jiminez*, 564 F.3d 1280, 1285 (11th Cir. 2009) (explaining we assume the jury answered credibility questions in a manner that supports the verdict, and a defendant's own testimony, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt).  Accordingly, we affirm Anthony's convictions.

*B.  U.S.S.G. § 2B1.1(b)(20(A)*

Second, Anthony asserts the district court plainly erred at sentencing in upwardly adjusting his offense level based upon the number of victims under U.S.S.G. § 2B1.1(b)(2)(A).  He contends the only victim in this case was the IRS, and that none of the identity fraud victims were harmed by conduct attributable to him.  He asserts that in Chapter Two of the Guidelines, "case involving" specifies

4

the particular case in which a defendant was convicted, not some other case that may be related to a defendant's offense or conviction, and requests this Court not expand the meaning of "case involving."

A defendant's base offense level is increased by 2 levels if the offense involved 10 or more victims.  U.S.S.G. § 2B1.1(b)(2)(A).  For purposes of § 2B1.1, "victim" means "any person who sustained any part of the actual loss" attributed to the crime.  *Id.* § 2B1.1, comment. (n.1).  In cases involving means of identification, a victim is defined to include "any individual whose means of identification was used unlawfully or without authority."  *Id.* § 2B1.1, comment. (n.4(E)(ii)).  A "means of identification" is "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual," including names, social security numbers, and dates of birth.  18 U.S.C. § 1028(d)(7).  The term "victim," for purposes of § 2B1.1(b)(2), "'is appropriately limited, however, to cover only those individuals whose means of identification are actually used.'"  *United States v. Hall*, 704 F.3d 1317, 1323 n.3 (11th Cir. 2013) (quoting U.S.S.G. app. C, amend. 726).

When calculating a defendant's sentencing range under the Guidelines, the sentencing court must consider all "relevant conduct" as defined in § 1B1.3.  *See United States v. Blanc*, 146 F.3d 847, 851–52 (11th Cir. 1998).  Because "the limits of sentencing accountability are not coextensive with the scope of criminal

liability," *United States v. Hamaker*, 455 F.3d 1316, 1336, 1338 (11th Cir. 2006) (quotations omitted), relevant conduct is broadly defined to include both uncharged and acquitted conduct that is proven at sentencing by a preponderance of the evidence. *Id.* Under § 1B1.3, relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" U.S.S.G. § 1B1.3.

The district court did not commit plain error in applying the § 2B1.1(b)(2)(A) enhancement. *See United States v. Bennett*, 472 F.3d 825, 831 (11th Cir. 2006) (reviewing objections to sentencing calculation issues raised for the first time on appeal for plain error). By not objecting to the presentence investigation report (PSI), Anthony admitted the facts contained therein. *See id.* at 833-34 (stating a defendant who fails to object to allegations of fact in the PSI admits those facts for sentencing purposes). These facts concluded he was accountable for theft of fraudulent tax returns issued in the names of 33 taxpayers. Because the PSI contained the factual finding that means of identification were used for 33 people, they qualified as victims. U.S.S.G. § 2B1.1, comment. (n.4(E)(ii)). Further, Anthony's arguments concerning the scope of the enhancement are unavailing because the district court, in sentencing, can consider conduct outside that underlying a conviction. Therefore, although Anthony did not

6

file the returns himself, he did aid and abet the stealing of treasury checks by cashing them and retaining the funds for his own use.

Furthermore, neither we nor the Supreme Court has issued binding precedent on the specific issue of whether receiving fraudulent Treasury checks constitutes unlawful use of means of identification under § 2B1.1(b)(2)(A), and therefore, the district court's application of the enhancement cannot be plain error. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (stating there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving the explicit language of a statute or rule at issue). Accordingly, the district court did not commit plain error in applying a two-level enhancement based on 33 victims, pursuant to § 2B1.1(b)(2)(A), and we affirm the district court's imposition of the enhancement.

## C. Restitution

Lastly, Anthony claims, and the Government concedes, that the district court plainly erred in ordering him to pay restitution in an amount greater than those losses attributable to the offense of conviction. He contends the district court ordered restitution in the amount of $252,088.03, but claims the district court was only authorized to enter judgement in the amount of $31,462.73.

A district court may order restitution only if a statute empowers it to do so. *United States v. Dickerson*, 370 F.3d 1330, 1335 (11th Cir. 2004). Pursuant to 18

U.S.C. § 3556, the district court is required to order restitution as part of a defendant's sentence under the Mandatory Victim Restitution Act (MVRA).  18 U.S.C. § 3663A.  The MVRA provides that a district court shall order restitution to a victim as part of the defendant's sentence for offenses against property under Title 18.  *Id.* § 3663A(a)(1), (c)(1)(A)(ii).  The MVRA defines a victim as:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

*Id.* § 3663A(a)(2).

Generally, a district court may impose restitution only for losses caused by the conduct underlying the offense of conviction.  *See United States v. Romines*, 204 F.3d 1067, 1068-69 (11th Cir. 2000).  However, based on the definition of victim in 18 U.S.C. § 3663A(a)(2), a district court may impose restitution for all losses caused by the defendant's conduct in the course of a scheme if the defendant was convicted of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity.  *See United States v. Foley*, 508 F.3d 627, 636 (11th Cir. 2007).

The district court plainly erred in basing Anthony's restitution amount on all of his relevant conduct, and we vacate the restitution order and remand the case for further proceedings in that respect.  *See* 18 U.S.C. § 3742(f)(1).  Under the MVRA,

restitution was mandatory as to Counts 1-5, as they constituted offenses against property under Title 18. *See id.* § 3663A(c)(1)(A)(ii). However, as Anthony was not convicted of an offense that involved as an element a scheme, conspiracy, or pattern of criminal activity, the district court only had the authority to impose restitution for the losses caused by Anthony's conduct underlying his actual convictions. *See Foley*, 508 F.3d at 636.

## II.  CONCLUSION

We affirm Anthony's conviction and custodial sentence. We vacate Anthony's restitution order, and remand with instructions to limit the restitution imposed as part of Anthony's total sentence to the losses caused by Anthony's conduct underlying his convictions.

**AFFRIMED IN PART, VACATED AND REMANDED IN PART.**