[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10831

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NICHOLAS THOMAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cr-00334-SDG-CMS-1

_____

Before JORDAN, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

Nicholas Thomas appeals his 55-month total sentence for one count of wire fraud conspiracy, 18 counts of wire fraud, and 9 counts of mail fraud.  On appeal, he argues that: (1) the district court improperly determined the amount of loss for which he was responsible under U.S.S.G. § 2B1.1(b), leading to an unreasonable sentence; and (2) the court should not have enhanced his offense level by three points under U.S.S.G. § 3B1.1(b) for playing an aggravating role in the offense.  After careful review, we affirm.

I.

"The Government bears the burden of establishing the loss attributable to the defendant by a preponderance of the evidence, and we review a district court's determination of monetary loss for clear error."  *United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015).  We will conclude that a finding of fact is clearly erroneous only if we are left with a "definite and firm conviction that a mistake has been committed."  *United States v. Pierre*, 825 F.3d 1183, 1191 (11th Cir. 2016) (quotations omitted).

We review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion."  *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)).  Finally, we review a determination that a defendant is subject to a

§ 3B1.1 role enhancement for clear error.  *See United States v. Crabtree*, 878 F.3d 1274, 1290 (11th Cir. 2018).

## II.

First, we are unpersuaded by Thomas's claim that the district court improperly determined the amount of loss for which he was responsible.  Section 2B1.1 provides the base offense level for crimes involving fraud and deceit and includes various increases in the offense level based on the amount of money at issue.  *United States v. Maxwell*, 579 F.3d 1282, 1305 (11th Cir. 2009).  Under § 2B1.1(b)(1), if the loss attributable to the defendant exceeds $550,000, but is less than $1,500,000, the defendant is subject to a 14-level increase in his offense level.  U.S.S.G. § 2B1.1(b)(1)(H).  However, if the loss attributable to a defendant is between $250,000 and $550,000, the defendant is subject to a 12-level increase in his offense level.  U.S.S.G. § 2B1.1(b)(1)(G).

While the government must support its loss calculations with specific, reliable evidence, the guidelines do not require that a sentencing court make a precise determination of loss.  *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011).  Instead, a sentencing court need only make a reasonable estimate of the loss, given the available information.  *Id.*; U.S.S.G. § 2B1.1, comment. (n.3(C)).  Because the district court is in a unique position to assess the evidence and estimate the loss based on that evidence, its loss determination is entitled to appropriate deference.  U.S.S.G. § 2B1.1, comment. (n.3(C)).

"[I]n calculating the amount of loss, the Guidelines require a district court to take into account not merely the charged conduct, but rather all relevant conduct, in calculating a defendant's offense level." *United States v. Foley*, 508 F.3d 627, 633 (11th Cir. 2007) (quotations omitted). The district court may hold all participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy where the acts and omissions are: (1) within the scope of the jointly undertaken criminal activity; (2) in furtherance of the activity; and (3) reasonably foreseeable in connection with the activity. *United States v. Whitman*, 887 F.3d 1240, 1248 (11th Cir. 2018); U.S.S.G. § 1B1.3(a)(1)(B).

To determine the scope of a defendant's agreement to participate in a jointly undertaken criminal scheme, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others. *Whitman*, 887 F.3d at 1248. A defendant's mere awareness that he was part of a larger scheme is insufficient to show that another individual's criminal activity was within the scope of jointly undertaken criminal activity, but actions that suggest that the defendant was actively involved in a criminal scheme permit the inference that the defendant agreed "to jointly undertake" that scheme. *Id.* For example, an implicit agreement may be inferred if, even though the various participants in the scheme acted on their own behalf, each of the participants knew each other and was aware of the other's activities, and they aided and abetted one another by sharing

information necessary to operate the scheme. *See United States v. Hunter*, 323 F.3d 1314, 1322 (11th Cir. 2003).

Under U.S.S.G § 1B1.8, if a defendant agrees to cooperate with the government by providing information concerning the unlawful activities of others, and the government agrees that any self-incriminating information revealed during that cooperation will not be used against the defendant, that information shall not be used in determining the applicable guidelines range. This restriction does not apply to information known to the government before the defendant enters into the cooperation agreement. U.S.S.G § 1B1.8(b)(1).

In reviewing the "'substantive reasonableness of [a] sentence imposed under an abuse-of-discretion standard,'" we consider the "'totality of the circumstances.'" *Pugh*, 515 F.3d at 1190 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a).[1] The

---

[1] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

court must consider all of the § 3553(a) factors, but it may give greater weight to some factors over others -- a decision that is within its sound discretion. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). We will not substitute our own judgment for that of the sentencing court and will sometimes affirm the district court even if we would have done something differently because the question is whether the district court's decision was "in the ballpark of permissible outcomes." *Id.* at 1257 (quotations omitted). Moreover, we've said that "[d]istrict courts have broad leeway in deciding how much weight to give to prior crimes the defendant has committed." *Id.* at 1261.

The disparity between sentences of codefendants is generally not an appropriate basis for relief on appeal. *Cavallo*, 790 F.3d at 1237. In considering the need to avoid unwarranted sentencing disparities, the district court should not draw comparisons to cases involving defendants who pleaded guilty or lacked extensive criminal histories if those things are not true of the defendants. *United States v. Jayyousi*, 657 F.3d 1085, 1118 (11th Cir. 2010). A sentence is substantively unreasonable when it does not reflect the need to avoid unwarranted sentencing disparities among defendants who committed similar crimes and the district court failed to adequately explain how its sentence avoids the disparity in sentences with other similarly-situated defendants. *Pugh*, 515 F.3d at 1202–03. When considering disparity, we first consider whether the defendant is similarly situated to his codefendants. *United States v.*

*Duperval*, 777 F.3d 1324, 1338 (11th Cir. 2015). And one source of dissimilarity stems from different charges of conviction. *Id.*

While we do not automatically presume a sentence falling within the guideline range to be reasonable, we ordinarily expect that sentence to be reasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). A sentence imposed well below the statutory maximum penalty is another indicator of reasonableness. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

Here, the district court did not clearly err in determining the amount of loss for which Thomas was responsible. For starters, Thomas does not challenge the loss calculations, and he even conceded in the district court that they were correct. As a result, the central inquiry for us is whether the district court erred in using the whole amount of loss, including that attributed to codefendant George Chambers, to calculate Thomas's offense level.

The crimes at issue arise out of a scheme in which Thomas, along with four codefendants -- Chambers, as well as Chelsea Gordon, Allen Hauser, and Michael Pitts -- ran a shell company called "Sophisticated Means" that defrauded various payroll processing companies. Specifically, Sophisticated Means contracted with several staffing companies to provide payroll services, but when the staffing companies issued payroll funds to Sophisticated Means's alleged "employees," Thomas and his codefendants kept the payroll funds for themselves and never reimbursed the staffing companies. The record reflects that Thomas discussed the scheme with Chambers before it began, and, to the extent that they did not execute

every aspect of the fraud together, Chambers executed his portions with Thomas's explicit or implicit approval, and Thomas received payment from Chambers sporadically throughout the scheme. Consistent with this evidence, Thomas was named in the wire fraud conspiracy count (Count One), and also in every substantive wire fraud and mail fraud count (Counts Two through Twenty-Eight). No other defendant was charged in all 28 counts. Thomas ultimately pleaded guilty to all 28 counts without a plea agreement.

Based on this record, both Thomas's and Chambers's acts were within the scope of the jointly undertaken scheme. *Whitman*, 887 F.3d at 1248; *see also* U.S.S.G. § 1B1.3(a)(1)(B). They both knew of each other's roles in the overall scheme, and they aided and abetted each other by sharing information and money as part of the scheme. *See Whitman*, 887 F.3d at 1248; *Hunter*, 323 F.3d at 1322. In addition, Chambers's individual acts -- in recruiting and supervising others into the scheme -- were reasonably foreseeable to Thomas based on the structure and workings of the fraud scheme itself, on which Thomas instructed Chambers. *See Whitman*, 887 F.3d at 1248; U.S.S.G. § 1B1.3(a)(1)(B). Accordingly, the district court did not clearly err in finding Thomas responsible for both his direct loss amount and the loss amounts of the other co-conspirators under U.S.S.G. § 1B1.3(a)(1)(B), nor in imposing a 14-level increase in his offense level under U.S.S.G. § 2B1.1(b)(1)(H). *See Whitman*, 887 F.3d at 1248.

Nor has Thomas shown that his sentence was substantively unreasonable. He claims that the district court failed to treat him

the same as similarly-situated codefendants for loss calculation purposes, but this argument is refuted by the record. As the district court explained in detail, he and Chambers were not similarly situated. *Duperval*, 777 F.3d at 1338. For one, U.S.S.G. § 1B1.8 -- which protects cooperating defendants who provide information to the government -- was applied to Chambers's interview, and the other defendants appear to have entered into plea agreements with the government, whereas Thomas did not.

Further, the district court concluded that Thomas and the other codefendants had different criminal histories; notably, the district court permissibly gave great weight to Thomas's relevant criminal history of very similar crimes in an earlier case, for which he was still on supervised release. *Rosales-Bruno*, 789 F.3d at 1261. The district court also found that Thomas and the other codefendants were not similarly situated because of the differences in the charges they faced in the present case. *Duperval*, 777 F.3d at 1338. Indeed, Thomas was the only defendant who pleaded guilty to all 28 charges, which was a permissible aggravating factor in reaching a sentence. *Id.* In light of these dissimilarities, Thomas has not overcome the general rule against relief on appeal based on sentence disparities between codefendants. *Cavallo*, 790 F.3d at 1237.

In short, Thomas has not shown that his 55-month total sentence -- which was within the applicable guidelines range and far below the statutory maximum total sentence he faced for all 28 of his felony convictions -- was substantively unreasonable. Accordingly, we affirm as to this issue.

III.

We also find no merit in Thomas's claim that the district court should not have enhanced his offense level by three points under U.S.S.G. § 3B1.1(b) for playing an aggravating role in the offense conduct.  Section 3B1.1 provides for a three-point enhancement if the defendant was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive.  U.S.S.G. § 3B1.1(b).  Courts consider several factors when determining whether a defendant was a manager or supervisor, including his decision-making authority, the nature of his participation in the offense, recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature, and scope of the offense, and the degree of control and authority exercised over others.  *Id.* comment. (n.(4)).

Here, the district court did not clearly err in awarding Thomas a three-point role enhancement under § 3B1.1.  As an initial matter, Thomas does not challenge the district court's factfinding on this issue, nor does he contest that the scheme involved five or more participants.  U.S.S.G. § 3B1.1(b).  Rather, he mainly reiterates his arguments that Chambers received a lower enhancement, entitling him to the same.

But regardless of whether Chambers should have also been awarded a three-level role enhancement, the district court's analysis as to Thomas properly considered the factors in the guidelines and in the commentary that justified a three-level enhancement for

Thomas.  U.S.S.G. § 3B1.1(b); *id.* comment. (n.(4)).  As the record reflects, Thomas was a manager and supervisor who had received payments from nearly all of his co-conspirators.  In addition, Chambers's testimony and the presentence investigation report ("PSI") revealed that Thomas had certain decision-making authority, owned the domain for Sophisticated Means, and helped organize the offense by teaching or instructing Chambers about his past experiences with payroll fraud. U.S.S.G. § 3B1.1 comment. (n.(4)). Further, both Gordon and Chambers identified Thomas as the originator of the scheme, and it is uncontested that Thomas had prior experience in his previous, similar scheme.  Based on these facts, the district court did not clearly err in finding that § 3B1.1(b) applied to Thomas, and Thomas's arguments do not raise a "definite and firm conviction that a mistake has been committed." *Pierre*, 825 F.3d at 1191.  Accordingly, we affirm as to this issue as well.

**AFFIRMED.**